**In re TRANS–TEXAS PETROLEUM CORPORATION, Debtor.**

**Bankruptcy No. 482–0223.**

United States Bankruptcy Court, N.D. Texas, Fort Worth Division.

Sept. 15, 1983.

Le Laurin & Adams, San Antonio, Tex., for City of San Antonio.

## MEMORANDUM OPINION

JOHN FLOWERS, Bankruptcy Judge.

This case was commenced by an involuntary petition filed against the Debtor, Trans-Texas Petroleum Corporation, ("Trans-Tex") on March 29, 1982 by two of its general trade creditors, the Wanda Petroleum Company ("Wanda") and the Enterprise Products Company ("Enterprise"). Shortly after filing the case was converted to one under chapter 11 and the debtor operated its business. The Houston Energy and Processing Company ("HEPCO"), filed a motion for adequate protection under § 363 of the Code on June 23, 1982. Wanda and Enterprise opposed HEPCO's motion for adequate protection on the ground HEPCO was not a secured creditor. After a hearing and before decision the case was re-converted to chapter 7 rendering moot the request for adequate protection and several other issues; however, the determination of the validity of HEPCO's lien is essential to the administration of the chapter 7 case.

In its brief HEPCO seeks an order that its possession of a note executed by the Baldridge Oil Company to Debtor and assigned to HEPCO does not constitute a voidable preference under 11 U.S.C. § 547(b). While Wanda and Enterprise did not explicitly raise the preference issue in their pleadings or briefs, oblique reference was made to it by Wanda's assertion that HEPCO was owed either $1,200,000 or $400,000, "depending on the treatment of the Baldridge note." While the preference issue is also material to the administration of the case, in the interest of fairness because this matter was only raised obliquely it will be reserved for future determination after a full factual development.

Prior to March of 1982 the Debtor operated as a gasoline wholesaler and retailer. Debtor's principal assets were its accounts receivable and inventory. Debtor used the proceeds from the collection of its accounts to purchase gasoline for its inventory to be sold to its customers in the future. On August 20, 1981, Trans-Tex executed a note to HEPCO, Debtor's gasoline supplier, in an amount of $1,260,000.00. Trans-Tex later executed a security agreement in favor of HEPCO, pledging Debtor's "accounts receivable, inventory and general intangibles" as security for the August 20 note "and all extentions and renewals thereof". By its terms the lien extends to all proceeds of the collateral. At the time of the hearing debtor's inventory, purchased with the proceeds from collection of its accounts receivable, was valued at several hundred thousand dollars. The Debtor's bank account was apparently in an overdraft position.

█ Wanda and Enterprise urge that HEPCO's security interest in the proceeds from Trans-Tex's accounts receivable is limited to those proceeds received during the 10 days immediately prior to the filing of Trans-Tex's bankruptcy petition and that HEPCO does not have a lien in any inventory acquired after bankruptcy. Most, if not all, of the inventory was acquired after the case was filed. Once a bankruptcy case is filed § 552 of the Bankruptcy Code abrogates the effect of all pre-petition security interests in subsequently acquired property except those security interests in proceeds to the extent recognized by applicable state law. Section 9.306 of the Texas Business and Commerce Code, which governs a secured party's rights to proceeds from accounts receivable, provides that in the case of a bankrupt Debtor, a party with a perfected security interest in proceeds continues to have a perfected post-petition security interest in all non-commingled, identifiable cash proceeds, and in proceeds commingled with other funds but only to the limited extent of cash proceeds received by the debtor within the 10 days before the institution of the bankruptcy proceedings, less certain amounts not material here. Tex.Bus.Comm.Code, Ann. § 9.306(d)(1)–(4) (Vernon Supp.1982–1983). This section destroys a secured creditor's right to trace, unless the debtor has segregated the cash proceeds from his other assets. See, *In the matter of Guaranteed Muffler Supply Co., Inc.,* 5 B.R. 236, 238 (Bkrtcy.N.D.Ga.1980); *In re Cooper,* 2 B.R. 188, 196 (Bkrtcy.S.D. Tex.1980).

HEPCO argues that the evidence adduced at trial was insufficient to establish that the cash proceeds to which its security interest attached were commingled with other funds. I do not agree. Larry Thomas testified that he was the president of Trans-Texas Petroleum; that Trans-Tex operated out of a single general deposit account; that this account was used to pay all of the expenses of the business including salaries, and taxes; that all revenues including the proceeds from the accounts receivable were deposited into this general account; and, that a payment made by him on a note due to Trans-Tex was inadvertently deposited into this general account instead of into a special account that was to be created to service the note. Tom Martin testified that he was the audit manager of Wanda and Enterprise; that he was familiar with the books and records of Trans-Tex; that Trans-Tex deposited into its general account $849.13 in rent from its subsidiary, Trans-Tex Marketing, a $54.50 insurance item, and a $500.00 cash item. In light of this testimony, which was largely undisputed, I hold that the evidence is sufficient to establish the commingling of proceeds with Trans-Tex's other cash assets. The Debtor operated its business after the bankruptcy case was filed for a period of three months before HEPCO sought adequate protection, during which time HEPCO made no effort to limit the use of the proceeds of its collateral. Hence, § 9.306(d)(4) operates to limit HEPCO's security interest to those cash proceeds received during the 10 days before Trans-Tex's filed its bankruptcy petition.

█ Section 552(b) of the Bankruptcy Code dictates that § 9.306(d)(4) shall be applied by the court, "except to the extent that the court, after notice and hearing and *based on the equities* of the case, orders otherwise" (emphasis added). 11 U.S.C. § 552(b). Under the Bankruptcy Act of 1898, the question of whether a security interest extended to post-petition proceeds, rents, and profits could only be resolved by reference to state law. The rationale was that property interests are created and defined by state law and unless some federal interest requires a different result, a mortgagee should be afforded in federal bankruptcy court the same protection he would have had under state law if no bankruptcy had ensued. See *Butner v. U.S.,* 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). Similarly, § 552(b) refers to applicable state law to determine whether certain security interests survive the initiation of a bankruptcy suit. However, unlike the Act, § 552(b) grants this court discretion, on equitable grounds, to modify or alter the security interest defined by state law. See *In re Ditoro,* 22 B.R. 392, 393 n. 5 (Bkrtcy.E.D. Pa.1982). See also, H.R.Rep. No. 95–595, 95th Cong., 1st Sess. (1977); S.Rep. No.

93–989, 95th Cong., 2d Sess. 91 (1978); U.S. Code Cong. & Admin.News 1978, p. 5787. In light of the testimony at the July 7, 1982 hearing, that the proceeds were commingled with other funds only to the extent of $1,403.63 and in consideration of the hardship that would be imposed on HEPCO if its security interest in the cash post-petition proceeds were reduced to a *de minimis* amount by operation of § 9.306(d)(4) and the lack of hardship to Wanda, Enterprise, and Trans-Tex, I hold that the equities of the case require Trans-Tex's post-petition cash proceeds be treated as if they were non-commingled and identifiable under § 9.306(d)(1). By virtue of HEPCO's security agreement with Trans-Tex and the operation of § 552(b) I hold that HEPCO has a security interest in the funds in Debtor's general bank account, and in all of Debtor's inventory purchased with the proceeds from the accounts receivable. Tex.Bus. & Comm. Code, Ann. § 9.306(a) (Vernon Supp.1982–83) ("Proceeds" includes that which is received upon the sale on exchange of other proceeds). See, *In re SMS, Inc.,* 15 B.R. 496 (Bkrtcy.D.Kan.1981).