**In re TRANSPORTATION DESIGN AND TECHNOLOGY, INC., Debtor.**

**Bankruptcy No. 84–00426–M11.**

United States Bankruptcy Court, S.D. California.

April 25, 1985.

---

JeRome Edward Tarver, Mitsui Manufacturers Bank, Los Angeles, Cal., for plaintiff.

Michael Y. McKinnon, San Diego, Cal., for defendant.

## MEMORANDUM OF OPINION

LOUISE DeCARL MALUGEN, Bankruptcy Judge.

Mitsui Manufacturers Bank ("Mitsui") filed a motion for relief from stay against Transportation Design and Technology, Inc., the debtor ("TDT") for the purpose of reclaiming certain collateral which is security for its debt. The Chapter 11 trustee of TDT filed a cross-motion to limit the security claim of Mitsui. By agreement of the parties, both matters came on for hearing on a consolidated basis.

## FACTUAL BACKGROUND

The facts in this matter are not seriously in contention. Graham Thorley ("Thorley"), a former employee, officer, director and shareholder of TDT, assigned to TDT various patents for the manufacture of wheel chair lifts ("pre-petition patents"). While Thorley and Donald Sullivan ("Sullivan"), also a former employee, officer, director and shareholder of TDT, were employed by TDT, they developed a new design for wheel chair lifts. Application was made for a patent on the new design. TDT claims a contractual agreement with Thorley and Sullivan to acquire the patent on the new design if it was issued.

In April 1983, Mitsui loaned money to TDT, taking a validly perfected security interest in a number of TDT assets, including "all general intangibles." TDT also granted Mitsui a security interest in after-acquired collateral of the type pledged in the security agreement. Mitsui recorded a UCC–1 financing statement with the California Secretary of State. Mitsui did not record any assignment of interest in the pre-petition patent with the United States Patent and Trademark Office (the "Patent Office").

On January 27, 1984, TDT filed a petition for reorganization under Chapter 11. In August 1984, the Patent Office issued a patent to Sullivan and Thorley on their redesigned lift (the "post-petition patent"). The post-petition patent has not yet been assigned to TDT and apparently is the subject of a dispute between Thorley and Sullivan and TDT. Mitsui is claiming an interest in the post-petition patent by virtue of the after-acquired property provision of its security agreement.

## ISSUES

### I.

Was Mitsui required to file or record notice of its interest in the Patent Office in order to perfect its security interest in TDT's pre-petition patent?

### II.

Does Mitsui have an interest in the patent to be acquired by TDT post-petition?

## ANALYSIS

### I.

The trustee argues that Mitsui was required to file or record notice of its security interest in the Patent Office in order to perfect a security interest in the patent. He argues that the mere filing of a UCC–1 financing statement with the Secretary of State was insufficient to perfect Mitsui's security interest because of 35 U.S.C. § 261, which states:

"An assignment, grant or conveyance shall be void as against any subsequent purchaser or mortgagee for valuable consideration, without notice, unless it is recorded in the Patent and Trademark Office within three months from its date or prior to the date of subsequent purchase or mortgage."

The trustee argues that where a federal statute provides for a different manner of perfecting a security interest than the Uniform Commercial Code, the federal statute prevails and the transaction is excluded from the operation of Article 9 by virtue of California Commercial Code § 9104(a).

Mitsui argues that CCC § 9104(a) does not require that perfection of security interest in patents be excluded from Article 9 because 35 U.S.C. § 261 does not apply to security interests in a patent and, therefore, does not preempt Article 9.

Curiously, the issue raised by the dispute appears to be one of first impression despite the long-standing co-existence of California Commercial Code § 9104(a) and 35 U.S.C. § 261.

For reasons explained below, this Court finds that Mitsui was not required to perfect its security interest in the pre-petition patent by filing or recording with the Patent Office in order to defeat the interests of the trustee.

A. *For Purposes Of Resolving The Competing Rights Of Mitsui As A Security Interest Holder And The Trustee As A Hypothetical Lien Creditor, There Is No Conflict Between 35 U.S.C. § 261 And California Commercial Code § 9104(a).*

■ The purpose of the patent law is to protect the development of new technology and encourage its use. In adopting the Patent Act of 1836 [Ch. 357, § 11, 5 STAT. 117 (1836) ], the Senate stated:

"Prior to the adoption of the Federal Constitution, the states, within their narrow limits, could give very little encouragement to inventors by grants of exclusive privileges....

\* \* \* \* \* \*

"1. A considerable portion of all the patents granted are worthless and void, as conflicting with, and infringing upon one another, and upon public rights not subject to patent privileges.

\* \* \* \* \* \*

"3. Out of this interference and collision of patents and privileges, a great number of lawsuits arise, which are daily increasing in an alarming degree, onerous to the courts, ruinous to the parties, and injurious to society.

4. It opens the door to frauds, which have already become extensive and serious." S.Rep. No. 239, 24th Cong., 1st Sess., reprinted in 6 Chisum, *Patents* App. 12–2; 12–4 (1984).

The statutory scheme adopted was one designed to protect those who owned patents and conclusively establish who should be consulted in the event someone desired to purchase or use the invention.

The Patent Act's comprehensive regulatory scheme governing ownership rights in a patent does not, however, necessarily conflict with an exercise of state rights over the questions of perfection and priority of security interests in the patent.

The drafters of the Uniform Commercial Code recognized that it was possible for federal laws and state laws regulating interests in personal property to co-exist. Although California Commercial Code § 9104(a) provides that a security interest subject to a federal statute governing the rights of parties to and third parties affected by transactions in particular types of property is excluded from Article 9, the Official Comments state:

"[B]ut to the extent that the ... (federal statute) does not regulate the rights of parties to and third parties affected by such transactions, security interests in ... (the personalty) remain subject to this Article.

"Although the Federal Copyright Act contains provisions permitting the mortgage of a copyright and for the recording of an assignment of a copyright (17 U.S.C. §§ 28, 30) such a statute would not seem to contain sufficient provisions regulating the rights of parties and third parties to exclude security interests in copyrights from provisions of this Article.

\* \* \* \* \* \*

"The exclusionary language in paragraph (a) is that this Article does not apply to such security interest 'to the extent' that the federal statute governs the rights of the parties. *Thus, if the federal statute contained no relevant provision, this Article could be looked to for an answer.*" (emphasis added)

█ The trustee argues that the grant of a security interest is a conveyance of such an interest in a patent that it must be recorded with the Patent Office in order to be perfected, citing as support *Waterman v. MacKenzie*, 138 U.S. 252, 11 S.Ct. 334, 34 L.Ed. 923 (1891). In considering 35 U.S.C. § 261's requirements, the United States Supreme Court, in the *Waterman* case held that a mortgagee whose mortgage was recorded in the Patent Office as an assignment, had the right to bring suit for infringement of the mortgaged patent. The patent owner had assigned the patent to the mortgagee in an assignment which provided that it would be void should the mortgagor/assignor pay the note according to its terms. The court reasoned that the recording of the mortgage in the Patent Office was the equivalent of the delivery of possession of the patent and "makes the title of the mortgagee complete towards all other persons, as well as against the mortgagor." *Ibid.* at 260, 11 S.Ct. at 337, 34 L.Ed. at 927.

The Supreme Court considered the granting of the mortgage equivalent to an assignment of a present ownership in the patent, subject to defeasance only by the condition subsequent of payment. Therefore, in order to be effective against subsequent bona fide purchasers (or mortgagees), the mortgage had to be recorded with the Patent Office.

Mitsui correctly observes that the grant of a security interest is not a conveyance of a present ownership right in the patent and, that like the creation of some other lesser rights in a patent (such as licenses) is not required to be recorded with the Patent Office. It is no longer necessary to create a security interest by assignment or transfer of title as was done in the *Water-man* transaction. The Uniform Commercial Code comment to U.C.C. § 9101 states:

"This article does not determine whether 'title' to the collateral is in the secured party or in the debtor and adopts neither a 'title theory' nor a 'lien theory' of security interests. Rights, obligations and remedies under the Article do not depend on a location of title (Section 9–202)."

█ In the Court's opinion, *Waterman* stands for the proposition that a bona fide purchaser holding a duly recorded conveyance of the ownership rights in a patent or a mortgagee who has recorded its interest as a transfer of title with the Patent Office will defeat the interests of a secured creditor of the grantor or mortgagor who has not filed notice of its security interest in the Patent Office. However, the trustee is in the position of a hypothetical lien creditor [11 U.S.C. § 544(a)(1)], not a *bona fide* purchaser. As such, his dispute with Mitsui can be governed by the Uniform Commercial Code provisions regulating competing lien claims against the patent without conflicting with the Patent Act's provisions protecting bona fide purchasers of the patent. Absent a clear conflict between the two provisions, the U.C.C. provisions remain applicable.

█ On the surface it may appear anomalous that a secured creditor could properly perfect under the U.C.C. and obtain protection against other competing lien creditors and yet not be protected against a bona fide purchaser or mortgagee who records with the Patent Office. But, a security interest has two purposes: First, it protects the interest of a secured creditor in collateral against subsequent or competing lien claimants of its debtor. Secondly, a security interest protects the secured creditor against the debtor transferring title to the collateral free of its interest. Ordinarily, perfecting a security interest in personalty in accordance with the U.C.C. would protect both interests of the secured creditor. However, where a federal statute, such as the Patent Act, governs one area or interest which the secured creditor wishes to protect (e.g., ownership), then the

federal statute pre-empts any other method of protecting that interest and is conclusive on the manner of protecting that interest. In other words, if the secured creditor wishes to protect itself against the debtor transferring title to the patent to a bona fide purchaser or mortgagee who properly records, then the secured creditor must bring its security interest (which is not ordinarily a transfer of title) within the provisions of the Patent Act governing transfer of title to patents. Only in that way can its debtor be barred from transferring title until the debt is repaid. In most cases, the sophisticated lender lending on intellectual property is in the best position to decide which of its interests it wishes to protect and if sale or transfer of that property by the debtor is a substantial concern, it will perfect its security interest by recording an assignment, grant or conveyance of the patent with the Patent Office to prevent its transfer.

The Court recognizes that this holding leaves a fairly narrow area remaining for state regulation. However, state law will still be required to resolve disputes and determine the relative rights of secured creditors and judgment lien claimants and between secured creditors, neither of whom have recorded with the Patent Office. In the absence of any overriding federal policy against it, the Uniform Commercial Code should continue to apply to the resolution of such matters.

## II

The trustee contends that even if Mitsui has a validly perfected security interest in the pre-petition patents, 11 U.S.C. § 552(a) avoids the effect of the after-acquired property clause in Mitsui's security agreement as to the post-petition patent, since the patent was issued after the commencement of the case.

Mitsui advances two alternative arguments to support its claim of a security interest in the post-petition patent:

1. An interest in a patent may arise by way of an agreement to make an assignment of the patent or the patent application. Here the debtor's interest in the patent arose from such an agreement or patent application which it made prior to the commencement of the case.

2. The patent issued post-petition is "proceeds, product, off-spring, rents, or profits" of the pre-petition patent as provided in § 552(b); thus, avoiding the effect of subsection (a).

■ As to Mitsui's first argument, Mitsui has specifically conditioned this argument on the premise that "if" such agreements had been executed and "if" such an application had been submitted pre-petition, then the operation of § 552(a) would be avoided. However, Mitsui has failed to introduce any evidence of the existence or terms of any such pre-petition agreements between Thorley and Sullivan and TDT. Mitsui has not carried the burden of establishing its security interest in property of the debtor and in the absence of sufficient evidence establishing the existence of these pre-petition agreements, the Court declines to rule in Mitsui's favor.

Secondly, Mitsui argues that the post-petition patent is exempted from 11 U.S.C. § 552(a) by § 552(b) which protects a secured party's interest in post-petition proceeds, products, off-spring, rents or profits. Section 552(a) provides:

"Except as provided in subsection (b) of this section, property acquired by the estate or by the debtor after the commencement of the case is not subject to any lien resulting from any security agreement entered into by the debtor before the commencement of the case."

The legislative history makes it clear that the purpose of this section is to facilitate the debtor's fresh start. Likewise, the commentators have recognized that where a transaction is subject to this section, the debtor, debtor-in-possession, or trustee may use, sell or lease property which would otherwise fall within the coverage of an after-acquired property clause of a pre-petition security agreement. 4 *Collier on Bankruptcy*, ¶ 552.01 at 552–3 (15th ed. 1984).

Subsection (b) carves out a narrow exception to the effect of § 552(a) for post-petition property which can be traced to a security agreement created before the commencement of the case, where the property is defined as either "proceeds, product, off-spring, rents, or profits of such property." Whether the secured party has a security interest in the proceeds, etc., is to be determined by the state law definition of such terms. *See, Matter of Chaseley's Foods, Inc.*, 726 F.2d 303, 307 (7th Cir.1983); *In re Trans-Texas Petroleum Corp.*, 33 B.R. 67, 69 (Bkrtcy.N.D.Texas 1983); (but compare) *Matter of Sunberg*, 35 B.R. 777, 783 (Bkrtcy.S.D.Iowa 1983). Therefore, Mitsui's argument that this Court should give these terms a broad definition as opposed to the definition contained in the California Commercial Code is not sound.

CCC § 9306(1) defines "proceeds" as: "... whatever is received when collateral or proceeds is sold, exchanged, collected or otherwise disposed of. The term also includes the account arising when the right to payment is earned under a contract right...."

The California Code comment to this section assumes without further amplification that "proceeds" arise when the collateral is sold or in some way disposed of. To adopt the tortuous definition suggested by Mitsui that the post-petition patent is somehow the "proceeds" of a pre-petition patent application would fly in the face of the clear meaning of the term as defined by the California Commercial Code.

Mitsui cites no other definitions of proceeds, etc., contained in the California Commercial Code which could be construed to include the post-petition patent, and the Court is aware of none.

## CONCLUSION

Based on the foregoing, Mitsui's security interest in the pre-petition patent is found to be perfected as against the Trustee, and since it has been stipulated by the parties that the debtor has no equity in the asset should the security interest be determined

validly perfected, Mitsui should be relieved of the stay forthwith. As to the post-petition patent, Mitsui has failed to establish the existence of a pre-petition agreement which could serve as the basis for claiming an interest in the post-petition patent as an after-acquired general intangible of the debtor, and has further failed to establish that the post-petition patent is within the exception of 11 U.S.C. § 552(b). The trustee's motion to limit the secured claim of Mitsui as to the post-petition patent is granted and Mitsui is denied its request for relief from the stay as to that patent.

This Opinion shall constitute findings of fact and conclusions of law in accordance with F.R.Civ.P. 52 as made applicable to the Bankruptcy Court by B.R. 7052. Counsel for Mitsui shall prepare and lodge an appropriate order within fourteen (14) days from the date herein.