In re COUNTY OF ORANGE, a political subdivision of the State of California; Orange County Investment Pools, an instrumentality of the County of Orange, Debtors.

ALLIANCE CAPITAL MANAGEMENT L.P. and Putnam Investment Management and the Benham California Tax-free and Municipal Funds: Tax-free Money Market Fund and Municipal Money Market Fund, Appellants,

v.

COUNTY OF ORANGE, a political subdivision of the State of California; Orange County Investment Pools, an instrumentality of the County of Orange, Appellees.

No. SACV 95–341–GLT [AR].
Bankruptcy Nos. SA 94–22272–JR, SA 94–22273–JR.

United States District Court,
C.D. California.

July 12, 1995.

Robert E. Darby, Chad C. Coombs, Fulbright & Jaworski, Los Angeles, CA, for appellants Alliance Capital Management L.P., Putnam Investment Management.

## RULING ON APPEAL

TAYLOR, District Judge.

The court concludes the California *Government Code* section 53856 lien securing Appellants' 1994–95 Tax and Revenue Anticipation Notes is a statutory lien which survived the filing of Orange County's Chapter 9 petition.

## I. *BACKGROUND*

Appellants hold approximately $60 million of Orange County, California, tax and revenue anticipation notes. Appellees are Orange County and its Investment Pool, an instrumentality of the County.

California *Government Code* sections 53850–53858 authorize local agencies, including counties, to issue tax and revenue anticipation notes (referred to as "TRANs") as a form of short-term municipal financing. California *Government Code* section 53853 requires all TRANs be authorized by resolution. California *Government Code* section 53856 governs the pledge of revenues, and provides:

> Any taxes, income, revenue, cash receipts, or other moneys of the local agency ... may be pledged to the payment of the note or notes and the interest thereon.... The resolution authorizing the issuance of the note or notes shall specify what taxes, income, revenue, cash receipts or other moneys are pledged for payment thereof.

The note or notes and the interest thereon shall be a first lien and charge against, and shall be payable from the first moneys received by the local agency from, such pledged moneys.

Pursuant to this provision, Orange County's Board of Supervisors adopted Resolution No. 94–675 in June 1994, authorizing issuance of up to $200 million in TRANs.

The Resolution provides

[A]s security for the payment of the principal of and interest on the Notes the County hereby pledges and grants a first lien and charge against [certain specified unrestricted revenues].

The Resolution required all pledged revenues be set aside on a monthly basis in a segregated repayment fund, beginning in September 1994 and ending in June 1995. If during any month the set aside was insufficient to satisfy the monthly requirement, the County was required to make up the difference from any generally available funds the County received during fiscal year 1994–95.

The County also executed a purchase contract with PaineWebber, Inc., for Paine-Webber to underwrite the notes. The contract states the notes

... shall be issued and secured pursuant to the provisions of the [Resolution] which Note Resolution was adopted in accordance with and pursuant to the provisions of [*Government Code* §§ 53850–53858].

The County additionally issued an "Official Statement," which disclosed material information about the 1994 Series A TRANs. It informed prospective purchasers the notes were "issued" in accordance with *Government Code* sections 53850–53858 "pursuant" to the Resolution, and "sold pursuant to" the Contract.[1]

In July 1994, the County issued and sold the notes to PaineWebber. Each note stated the "[p]ayment of the principal of this Note and the interest hereon are secured by a pledge of, and first lien and charge against ... the 'Pledged Moneys.' ..."

From September 1994 through November 1994, the County performed its set aside responsibilities, making bookkeeping entries of set aside payments totaling approximately $36.6 million.

On December 6, 1994, Appellees filed for Chapter 9 bankruptcy protection. The County stopped making its set aside payments, asserting it was not required to make payments due to 11 U.S.C. section 552(a). In late December the County notified Appellants it would no longer honor the set aside requirements.

Appellants sought relief from stay from the bankruptcy court to pursue a state court action compelling the County to make the required set aside payments. After noting that the matter presented "a very difficult issue" with "no case law that's helpful in terms of deciding this issue," the bankruptcy court denied the requested relief. The court ruled Appellants had a security interest rather than a statutory lien, which did not survive the filing of the County's Chapter 9 petition. *See* 11 U.S.C. § 552(a). Appellants now appeal that ruling, contending they have a statutory lien.

## II.  *DISCUSSION*

■ The bankruptcy court's conclusions of law are reviewed *de novo*, and its findings of fact are reviewed under the "clearly erroneous" standard. Fed.R.Bankr.P. 8013; *Steelcase Inc. v. Johnston (In re Johnston)*, 21 F.3d 323, 326 (9th Cir.1994).

A court may grant relief from the automatic bankruptcy stay "for cause, including the lack of adequate protection of an interest in property of [a] party in interest." 11 U.S.C. § 362(d)(1). Appellants, as the moving party, bear the initial burden of demonstrating such "cause" exists. *See* 2 *Collier on Bankruptcy*, para. 362.10, at 362–87 (15th ed. 1994).

To meet this burden, Appellants assert the lien securing the TRANs is a statutory lien,

---

1. The statement also warned bondholders enforceability of the rights and remedies of the owners of the Notes, and the obligations incurred by the County, may become subject to the following: the Federal Bankruptcy Code and applicable bankruptcy ... laws relating to or affecting the enforcement of creditor's rights generally....

and thus is exempt from 11 U.S.C. section 552(a) and survives the commencement of the bankruptcy. Accordingly, Appellants argue, the County's failure to make monthly set asides constitutes "cause" for relief from the bankruptcy stay.

■ The issue to be decided, therefore, is whether Appellants' interest is a statutory lien, and therefore not covered by section 552(a).

### 1. *The security is a statutory lien.*

11 U.S.C. section 552(a) provides:

[E]xcept as provided in subsection (b) of this section, property acquired by the estate or by the debtor after the commencement of the case is not subject to any lien resulting from any security agreement entered into by the debtor before the commencement of the case.

■ By its terms, section 552(a) only applies to liens resulting from security agreements, not other types of liens such as statutory liens. *See, e.g., United States v. Fuller (In re Fuller),* 134 B.R. 945, 948 (Bankr.9th Cir.1992); 4 *Collier,* para. 552.01, at 552–4. Appellants argue the lien securing the TRANs is a statutory lien, and therefore section 552(a) does not apply. The court agrees.

11 U.S.C. section 101(37) defines a "lien" as a "charge against or interest in property to secure payment of a debt or performance of an obligation." The legislative comments to this provision state,

[i]n general, the concept of lien is divided into three kinds of liens: judicial liens, security interests, and statutory liens. Those three categories are mutually exclusive. . . .

S.Rep. No. 95–989, 95th Cong., 2nd Sess. (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 6269.

11 U.S.C. section 101(53) defines a "statutory lien," in relevant part, as a

lien arising solely by force of a statute on specified circumstances or conditions, . . . but does not include security interest or judicial lien, whether or not such interest or lien is provided by or is dependent on a statute and whether or not such interest or lien is made fully effective by statute.

The legislative comments to section 101(53) provide "[a] statutory lien is only one that arises automatically, and is not based on an agreement to give a lien or on a judicial action." S.Rep. No. 95–989, 95th Cong., 2nd Sess. (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 6271.

11 U.S.C. section 101(51), on the other hand, defines a "security interest" as a "lien created by an agreement," and 11 U.S.C. section 101(50) defines a "security agreement" as an "agreement that creates or provides for a security interest."

Collier distinguishes statutory liens and security interests by noting:

[I]f the lien arises by force of statute, without any prior consent between the parties, it will be deemed a statutory lien. . . . If the creation of the lien is dependent upon an agreement, it is a security interest even though there is a statute which may govern many aspects of the lien.

2 *Collier,* para. 101.53, at 101–150–51.

The difference between statutory liens and security interests is sometimes obscure. Security interests "commonly find authorization and clarification in existing state statutes. . . ." *Seel v. Topeka Lumber Co. (In re Seel),* 22 B.R. 692, 695 (Bankr.D.Kan.1982) (*quoting* 2 *Norton Bankruptcy Law and Practice* § 31.01, at 2–3 (1981)). Meanwhile, statutory liens

most commonly arise only if a contract exists between the debtor and the lien claimant; mechanic's liens on real estate are a primary example. In distinguishing between the two, the focus is on the presence of a contract provision granting a property interest to the claimant and on the extent to which that contract provision is a necessary condition precedent for the existence of the lien. If such contractual grant is a necessary precondition, the lien is not a statutory lien even though state statutes define the scope and quality of the property interest in detailed terms.

*Id.* Thus, the "distinguishing feature of a statutory lien is that it arises 'solely' by force of a statute." *Id.*

The interest at hand meets the criteria for a statutory lien. California *Government Code* section 53852 authorizes the County to borrow by issuing notes. Section 53856 authorizes the County to pledge assets to secure those notes, and requires the resolution authorizing the notes to specify what assets are pledged. Finally, section 53856 imposes a statutory lien by providing "[t]he note or notes and the interest thereon shall be a first lien and charge against, and shall be payable from the first moneys received by the local agency from, such pledged moneys."

The plain language of the statute creates a statutory lien. Section 53856 permits the County to decide *whether* to pledge, and *what* to pledge. But the statute itself imposes the pledge, without further action by the County. The County has no choice of the type of lien or its terms. The lien is fixed by law as a first lien, precluding any agreement for secondary, junior, or lesser status.

The fact the County has the choice of whether to pledge and what to pledge does not undermine the statutory source of the lien. This potential was foreseen in 11 U.S.C. section 101(53)'s definition of a statutory lien as a "lien arising solely by force of a statute *on specified circumstances or conditions ...*" (emphasis added). Here, the circumstances specified in the statute were met: the County decided to pledge, and what to pledge. The specified circumstances having occurred, the lien arose by operation of law.

No different outcome is compelled because section 53856 provides that revenues "*may* be pledged." Although the choice whether to borrow on a secured basis was voluntary, the statute accomplished the pledge. In mandatory "shall" language, the statute imposes the lien. This is no different from the mandatory language creating other California statutory liens. *See, e.g.,* California *Government Code* §§ 53829 ("constitutes a first lien

and charge"), 53830 ("constitutes a first lien and charge"), 53840 ("shall be secured by a lien"), 53859.06 ("are a first lien"). Even though the choice whether to make secured borrowing is consensual, the lien is not.[2] The lien arose, without consent or negotiation as to its terms or nature, upon the happening of the circumstance specified in the statute—the decision to make secured borrowing and what to pledge. *See* 11 U.S.C. § 101(53).

The statutory nature of the lien is not changed by the fact there was an agreement between the parties. Whether borrowing is secured by a statutory lien or a security agreement, documentation to reflect the parties' meeting of the minds would be expected. But here the *creation of the lien* is not dependent upon the agreement. *See* 2 *Collier,* para. 101.53, at 101–150–51. The lien arose automatically, with no contract provision as a condition precedent. If the County had made no reference to granting a lien in its Resolution or later documentation, the lien would be present by operation of section 53856.[3]

### 2. *The parties' transactional documents do not invalidate or replace the statutory lien.*

The bankruptcy court found the transactional documents between the parties, when taken together, constitute a security agreement:

> [T]he documents (the Resolution, Contract and TRANs), when viewed together, indicate that the parties intended to create a lien. The Resolution may be viewed as an *offer* to sell the TRANs, secured by a first lien and charge against certain revenues. This offer was then accepted by Paine-Webber. Although the Contract does not contain any language specifically creating a

---

**2.** The use of the word "may" in allowing a choice to borrow does not make the section 53856 lien consensual, any more than the use of the word "may" in the section 53840 statutory lien makes it consensual. (*Government Code* § 53840: "[A county] may borrow ...").

**3.** Appellants are not particularly supported by their reliance on *Badger Mountain Irrigation District Secured Bondholders' Committee v. Badger*

*Mountain Irrigation District (In re Badger Mountain Irrigation District),* 885 F.2d 606 (9th Cir.) *reh'g denied* (1982), which did not involve section 552(a) and the question whether a lien was a security interest or statutory lien; the Ninth Circuit merely agreed with an undisputed bankruptcy court conclusion that the lien was a statutory lien.

lien, it specifically incorporates the granting language contained in the Resolution.

It is not necessary for this court to review whether the parties' documentation amounted to merely a contractual acknowledgement and affirmance between them of the statutory lien created by section 53856, or the creation of a separate security agreement. Even if it is a separate security agreement, it does not invalidate or replace the section 53856 statutory lien established by law.

The possibility of simultaneous separate liens has been recognized:

> Close questions of interpretation arise, however, in those cases in which a contract grant is present even though it is not a necessary condition precedent to the creation of a lien [citing 11 U.S.C. § 101(53)]. In such cases, one possible conclusion is that two distinct liens exist, one contractual and one statutory....

Norton, *Bankruptcy Law And Practice* 2d § 55:1, at 55-5 (1994).

Whether a separate security agreement or not, the documentation between the parties does not displace the statutory lien. The statute does not require, or even contemplate, separate lien language in the parties' documentation as a condition precedent to a lien.

### 3. *The section 552(b) "proceeds" exception would not apply.*

■ Appellants argue that, even if their lien were a security interest ordinarily cut off by section 552(a), the lien would survive under the exception in section 552(b). This argument was correctly rejected by the bankruptcy court.

Section 552(b) provides:

> [I]f the debtor and an entity entered into a security agreement before the commencement of the case and if the security interest created by such security agreement extends to property of the debtor acquired before the commencement of the case and to proceeds, product, offspring, or profits of such property, then such security interest extends to such proceeds, product, offspring, or profits acquired by the estate after the commencement of the case to the

extent provided by such security agreement and by applicable nonbankruptcy law, except to any extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise.

The County's Resolution identified the assets to be pledged as:

> [T]he first $14,000,000 of unrestricted revenues received by the County in September, 1994 [and the first of various amounts of unrestricted revenues received each month through June 1995].... The term "unrestricted revenues" shall mean taxes, income, revenue, cash receipts, and other money of the County as provided in Section 53856 of the Law, which are intended as receipts for the general fund of the County during fiscal year 1994–95 and which are generally available for the payment of current expenses and other obligations of the County. The principal of the Notes and the interest thereon shall be payable from the Pledged Moneys and from all other income, revenue, cash receipts and moneys of the County lawfully available for the payment of the principal of the Notes and the interest thereon.

Appellants assert the language of the Resolution necessarily included a security interest in all rights to unrestricted 1994–95 taxes, including property taxes. Since fiscal year 1994–95 property taxes accrued on March 1, 1994, (i.e., before the bankruptcy), Appellants argue the County had a pre-bankruptcy petition property right to payment of these taxes. Accordingly, Appellants assert post-bankruptcy petition tax payments constitute "proceeds" of the pre-petition property right which is subject to the lien.

■ The bankruptcy court ruled section 552(b) did not apply because neither the Resolution nor section 53856 make any reference to a security interest in pre-petition property. This court agrees. Section 552(b) only "provides a *narrow* exception to the general rule of 552(a)." *Philip Morris Capital Corp. v. Bering Trader, Inc. (In re Bering Trader, Inc.)*, 944 F.2d 500, 502 (9th Cir.1991) (emphasis in original). In order for the section 552(b) exception to apply, the security interest must extend to "prepetition property of

the debtor *and* to proceeds, product, offspring, rents or profits of such property." *Id.* at 501 (emphasis in original).

In the present case, Appellants have not demonstrated they have an interest in the County's pre-bankruptcy petition right to collect taxes. The lien only gave Appellants an interest in taxes collected, not in the right to collect taxes. *See Kleinfeld v. F.D.I.C. (In re Froid),* 109 B.R. 481 (Bankr.M.D.Fla.1989).

Appellants have not shown section 552(b) would apply if their interest were a security interest rather than a statutory lien.

### III. *DISPOSITION*

The court concludes the lien securing the subject 1994–95 Tax and Revenue Anticipation Notes is a statutory lien which survived filing of the County's Chapter 9 petition. However, this does not require granting Appellants' motion for relief from the automatic stay to pursue relief in state court. The bankruptcy court found, and the County has agreed, that the bankruptcy court may order adequate protection of Appellants' interest. At oral argument, the parties agreed the bankruptcy court could perform that function.

Accordingly, the matter is remanded to the bankruptcy court to provide Appellants with adequate protection of their interests.