

**ORDERED PUBLISHED**

### UNITED STATES BANKRUPTCY APPELLATE PANEL

### OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP Nos.   OR-15-1141-KiFJu |
| |             OR-15-1190-KiFJu |
| MICHAEL W. ENDRESEN and |             (cross-appeals) |
| JOANNE MAUREEN ENDRESEN, | |
| | Bk. No.   11-35396-RLD |
|          Debtors. | |
| | Adv. No.   14-3131-RLD |
| _____ | |
| | |
| STEPHEN P. ARNOT, Chapter 7 | |
| Trustee, | |
| | |
|          Appellant, | |
| | |
| v. | **O P I N I O N** |
| | |
| MICHAEL W. ENDRESEN; JOANNE | |
| MAUREEN ENDRESEN; GREEN TREE | |
| SERVICING, LLC; THE BANK OF | |
| NEW YORK MELLON, f/k/a THE | |
| BANK OF NEW YORK, as Trustee | |
| for the Holders of First | |
| Horizon Mortgage Pass-Through | |
| Certificates, Series FHAMS | |
| 2004-AA7; THE BANK OF NEW | |
| YORK MELLON, as Successor to | |
| JPMorgan Chase Bank, as | |
| Trustee for the Holders of | |
| Bear Stearns Alt-A Trust | |
| 2005-1 Mortgage Pass-Through | |
| Certificates, Series 2005-1; | |
| THE BANK OF NEW YORK MELLON, | |
| f/k/a THE BANK OF NEW YORK, | |
| as Trustee for the Holders of | |
| American Home Mortgage | |
| Investment Trust 2004-4; U.S. | |
| BANK, NATIONAL ASSOCIATION, | |
| as Trustee for Adjustable | |
| Rate Mortgage Trust 2005-2, | |
| Adjustable Rate Mortgage- | |
| Backed Pass-Through | |
| Certificates, Series 2005-2, | |
| | |
|          Appellees. | |
| _____ | |

Argued and Submitted on March 17, 2016,

at Pasadena, California

Filed - April 8, 2016

Appeal from the United States Bankruptcy Court
for the District of Oregon

Honorable Randall L. Dunn, Bankruptcy Judge, Presiding

Appearances:    David A. Foraker of Greene & Markley, P.C. argued for appellant/cross-appellee Stephen P. Arnot, Chapter 7 Trustee; Michael R. Blaskowsky of Columbia River Law Group argued for appellees/cross-appellants Michael and Joanne Endresen; and David Elkanich of Holland & Knight LLP argued for appellee Bank of New York Mellon.

Before:    KIRSCHER, FARIS and JURY, Bankruptcy Judges.

KIRSCHER, Bankruptcy Judge:

Stephen P. Arnot, chapter 7[1] trustee, appeals a judgment determining that appellees Green Tree Servicing, LLC; The Bank of New York Mellon, f/k/a The Bank of New York, as Trustee for the Holders of First Horizon Mortgage Pass-Through Certificates, Series FHAMS 2004-AA7; The Bank of New York Mellon, as Successor to JPMorgan Chase Bank, as Trustee for the Holders of Bear Stearns Alt-A Trust 2005-1 Mortgage Pass-Through Certificates, Series 2005-1; and The Bank of New York Mellon, f/k/a The Bank of New York, as Trustee for the Holders of American Home Mortgage Investment Trust 2004-4 (collectively, "Lenders") were entitled to settlement funds awarded to debtors Michael and Joanne Endresen in

---

[1] Unless specified otherwise, all chapter, code and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and the Federal Rules of Bankruptcy Procedure, Rules 1001-9037. The Federal Rules of Civil Procedure are referred to as "Civil Rules."

-2-

connection with construction defect claims the couple litigated in state court nearly two years after their chapter 7 bankruptcy case had closed. Debtors cross-appeal the bankruptcy court's decision to award a portion of the settlement funds to Trustee and not to lender U.S. Bank, N.A., which failed to appear in the case. We AFFIRM as to the bankruptcy court's determination that the settlement funds were part of Lenders' collateral and REVERSE as to the bankruptcy court's award of U.S. Bank's share of the settlement funds to Trustee.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

**A. Prepetition events**

The facts are not in dispute. In 2004, Debtors purchased ten rowhomes in Portland, Oregon for the purpose of producing rental income (the "Properties"). To purchase the Properties, Debtors obtained several loans from the Lenders[2] which were secured by deeds of trust ("Trust Deeds") recorded on each of the Properties in November 2004. Each of the Trust Deeds is modeled after the Fannie Mae/Freddie Mac Uniform Instrument with MERS for an Oregon Single Family Residence, identified as Form 3038 1/01. The provisions relevant to these appeals are identical in each Trust Deed. Specifically, among the defined terms is "Miscellaneous Proceeds:"

> **(N) Miscellaneous Proceeds** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property;

[2] Lenders either originated the loans made to Debtors or acquired their claims by assignment. No one has questioned the validity of these assignments.

-3-

(iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

Section 11 of each Trust Deed, entitled "Assignment of Miscellaneous Proceeds; Forfeiture," provides in relevant part:

All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

Unbeknownst to either Debtors or Lenders, the Properties had defects in their construction that resulted in significant water and mold damage.

**B. Postpetition events**

Debtors filed their chapter 7 bankruptcy case on June 21, 2011. On October 17, 2011, Debtors received their discharge and the case was closed as a "no asset" case.

-4-

On November 9, 2011, Debtors filed a chapter 13 petition. The claims of the Lenders are provided for in Debtors' confirmed chapter 13 plan and remain unsatisfied.

In May 2013, Debtors were added as co-plaintiffs in a civil action pending against the builder of the rowhomes in Oregon state court. The plaintiffs alleged that the Properties, built in 2003, were negligently constructed and that the construction defects in the Properties and related damage were discovered in 2012 after a consultant's evaluation.

The bankruptcy court reopened Debtors' chapter 7 bankruptcy case on February 3, 2014. On that same date, Debtors' part of the state court action for the construction defect claims was settled for $318,200. The bankruptcy court entered an order approving the settlement. After payment of attorney's fees and costs, the balance of the proceeds to Debtors was $185,525.47 ("Settlement Proceeds"). The Settlement Proceeds are being held in trust by Debtors' state court attorney pending the outcome of this appeal.

**1.    Trustee's adversary complaint and the cross-motions for summary judgment**

Trustee sought a determination that Lenders had no enforceable security interests in the Settlement Proceeds.[3] Trustee contended that the description of Lenders' personal property collateral in the definition of "Miscellaneous Proceeds" in the Trust Deeds did not reasonably identify the construction

---

[3]    Trustee also contended that the Settlement Proceeds were property of the estate, which Debtors and Lenders opposed. Ultimately, the bankruptcy court agreed with Trustee, granting him summary judgment on that issue. Because no party has appealed that ruling, we do not address it or discuss it any further.

defect claims and, for that reason, the Trust Deeds did not create an enforceable security interest in those claims or the derived Settlement Proceeds. Alternatively, Trustee argued that even if the description in the Trust Deeds reasonably identified the construction defect claims as collateral, Lenders had no enforceable security interest in the Settlement Proceeds because (1) the construction defect claims were commercial tort claims that did not exist when Debtors executed the Trust Deeds, (2) under Oregon law, an after-acquired property clause in a security agreement is ineffective to create an enforceable security interest in a commercial tort claim that is after-acquired collateral, and (3) the Settlement Proceeds were proceeds of, or a right arising out of, these commercial tort claims.

Debtors and Lenders (except for U.S. Bank) filed answers denying Trustee's claims, contending that the Trust Deeds gave Lenders an enforceable interest in the Settlement Proceeds, which was superior to Trustee's interest. Despite being properly served with the complaint, lender U.S. Bank did not respond to Trustee's amended complaint, and a default order was entered.

Trustee then moved for summary judgment. He contended that the Uniform Commercial Code ("UCC"), as adopted in Oregon, determined the validity and scope of the security interest granted by Debtors in their personal property under the Trust Deeds. Trustee argued that because the definition of Miscellaneous Proceeds in the Trust Deeds did not identify the Settlement Proceeds sufficiently to create an enforceable security interest in them and because the Settlement Proceeds were derived from commercial tort claims (the construction defect claims), the tort

claims and derived proceeds constituted "after-acquired" property of the estate. Accordingly, the Settlement Proceeds were "property acquired by the estate . . . after the commencement of the case" as that phrase is used in § 552(a).[4] Trustee argued that Lenders' Article 9 security interests, if any, were not created until after Debtors filed their chapter 7 petition. Therefore, their purported interests did not "attach" — and thus could not have become enforceable against Debtors — until Debtors collected the Settlement Proceeds postpetition. Thus, argued Trustee, Lenders' security interest in the Settlement Proceeds, even if otherwise enforceable under Oregon law, did not attach until "after the commencement of the case." Consequently, the Settlement Proceeds were "not subject to any lien resulting from" the prepetition Trust Deeds within the meaning of § 552(a).

Debtors and Lenders opposed Trustee's motion and filed cross-motions for summary judgment. Lenders contended they had a continuing security interest in the Settlement Proceeds under § 552(b)(1)[5] because they were "proceeds" of the original, damaged

_____

[4] Section 552(a) provides:

Except as provided in subsection (b) of this section, property acquired by the estate or by the debtor after the commencement of the case is not subject to any lien resulting from any security agreement entered into by the debtor before the commencement of the case.

[5] Section 552(b)(1) provides, in relevant part:

[I]f the debtor and an entity entered into a security agreement before the commencement of the case and if the security interest created by such security agreement extends to property of the debtor acquired before the commencement of the case and to proceeds, products, offspring, or profits of such property, then such security interest extends to such
(continued...)

-7-

collateral. Lenders maintained that the Settlement Proceeds fell within the definition of "proceeds" under Oregon Revised Statutes § 79.0102(kkk)(B) & (D).[6] Oregon law further provided that a security interest in proceeds is a perfected security interest if the security interest in the original collateral was perfected. Or. Rev. Stat. § 79.0315(3). Lenders argued that because they had perfected their security interests in the Properties by recording the Trust Deeds, they had also perfected their security interests in the Settlement Proceeds intended to be an award for damage to and diminution in value of the original collateral Properties.

Trustee disputed Lenders' contention that the Settlement Proceeds were "proceeds" of their original, damaged collateral. He maintained that Oregon UCC law applied only to the extent Lenders were granted security interests in the Miscellaneous Proceeds as original collateral; it did not apply to the extent they were granted a lien on real property as original collateral.

---

[5](...continued)
proceeds, products, offspring, or profits acquired by the estate after the commencement of the case to the extent provided by such security agreement and by applicable nonbankruptcy law, except to any extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise.

[6] Or. Rev. Stat. § 79.0102(kkk)(B) and (D) provide that "proceeds" means:

(B) Whatever is collected on, or distributed on account of, collateral;

. . . .

(D) To the extent of the value of collateral, claims arising out of the loss, nonconformity or interference with the use of, defects or infringement of rights in, or damage to, the collateral.

-8-

Lenders' personal property collateral was that which was described in the definition of "Miscellaneous Proceeds" contained in the Trust Deeds. Thus, argued Trustee, to the extent the definition of "Miscellaneous Proceeds" could be interpreted to encompass the Settlement Proceeds, which Trustee disputed, the Settlement Proceeds themselves constituted the Lenders' original personal property collateral, and Article 9 applied only if Lenders had enforceable security interests in the construction defect claims as original collateral, as opposed to the real property. Because Lenders never had a security interest in the defect claims, argued Trustee, they could not have an interest in the Settlement Proceeds as "proceeds" of those claims.

Accordingly, Trustee disputed that § 552(b)(1) applied because Lenders did not have enforceable security interests in the Settlement Proceeds as "proceeds" of any original collateral.

### 2. The court's tentative ruling and the parties' supplemental briefing

After the bankruptcy court issued its tentative ruling in favor of Lenders, it invited supplemental briefing before issuing its final decision.

Trustee filed his supplemental brief along with a motion for leave to file a second amended complaint. In his supplemental brief, Trustee argued that for the proceeds exception under § 552(b)(1) to apply, the court had to determine that (1) the Settlement Proceeds are "proceeds" of Lenders' prepetition collateral (as that term is used in § 552(b)(1)) and (2) their security interests under the Trust Deeds "extend" to the Settlement Proceeds as "proceeds" of such prepetition collateral.

-9-

Trustee contended that the § 552(b)(1) exception did not apply because Lenders' security interests in the Settlement Proceeds attached to that postpetition estate property as original collateral for the loan, not as proceeds of their prepetition real property collateral.

To explain, Trustee contended that although under Oregon law a secured party with a security interest in personal property has an automatic right to proceeds of that personal property collateral, no comparable Oregon statute gives a mortgagee an automatic right to proceeds of real property collateral. Specifically, asserted Trustee, UCC Revised Article 9 did not apply to the "creation or transfer of an interest in or lien on real property . . . and the proceeds thereof." Or. Rev. Stat. § 79.109(4)(k). Trustee contended that liens on real property were governed generally by the laws relating to mortgages and trust deeds. Thus, it followed that the automatic proceeds provision in UCC Revised Article 9 did not apply to Lenders' real property collateral.

Trustee contended that if Lenders had a security interest in any proceeds of their prepetition real property collateral, it could be only because Debtors granted them such interest under the Trust Deeds. Trustee maintained that only two grant clauses existed in the Trust Deeds, and arguably the only one applicable here was the Assignment of Miscellaneous Proceeds clause, wherein Debtors assigned any Miscellaneous Proceeds to Lenders. Trustee argued that the "proceeds" described there essentially consisted of proceeds realized from causes of actions relating to real property – e.g., tort claims for "damage to, or destruction of,

-10-

the Property," or fraud-based or breach of contract claims for "misrepresentation of, or omissions as to, the value and/or condition of the Property." Trustee argued that because the Trust Deeds failed to include the necessary "link" between the real property collateral and the Settlement Proceeds — i.e., Lenders' right to Debtors' tort causes of action — the Settlement Proceeds could not be traced to any collateral from which the tort claim might have derived.

In summary, Trustee contended that in construing § 552(b)(1) in the context of real property collateral, "proceeds" should mean proceeds under state common law principles, as opposed to the UCC. In Oregon, which has no statute defining the scope of proceeds for secured transactions in real property, Trustee contended that the term "proceeds," as used in § 552(b)(1), means proceeds under applicable state common law principles. Under Oregon common law, as argued by Trustee, proceeds of a payment intangible that arises from the settlement of commercial tort claims for construction defects are not "proceeds" of the real property collateral that was defectively constructed. Accordingly, Lenders' security interest did not "extend" to the Settlement Proceeds as "proceeds" of any of their prepetition collateral, and the requirements of § 552(b)(1) had not been met.

Lenders maintained that the bankruptcy court's tentative ruling correctly categorized the Settlement Proceeds as a prepetition assignment to Lenders, which was bargained for by the parties in the Trust Deeds. Lenders contended that nothing in Oregon UCC law prevented the parties from assigning the Settlement Proceeds to Lenders under the Trust Deeds. Furthermore, Oregon

-11-

law provided that the provisions of the UCC may be varied by agreement. Or. Rev. Stat. § 71.3020(1). Thus, argued Lenders, even if a provision of Oregon's UCC law arguably conflicted with the assignment of the Settlement Proceeds as "Miscellaneous Proceeds," the parties could agree to modify the effect of any such provisions via their agreement in the Trust Deeds.

Debtors contended that even though U.S. Bank had not appeared, it still had an enforceable security interest in the Settlement Proceeds based on the Trust Deeds. Debtors maintained that U.S. Bank's failure to participate did not terminate or affect that interest and argued that the court would exceed its authority by holding otherwise.

Before the bankruptcy court was also Trustee's motion for leave to file a second amended complaint, which Debtors and Lenders opposed on both procedural and substantive grounds. Trustee explained that while working on his post-hearing brief, he identified a "new theory" for obtaining relief against Lenders. Under Or. Rev. Stat. § 79.0317(1)(a), Trustee as "lien creditor" had priority over the Lenders' security interests in the Settlement Proceeds, because those security interests were unperfected. Thus, under this new theory, explained Trustee, his rights to the Settlement Proceeds were senior to those of Lenders, even if the bankruptcy court determined that their security interests in the Settlement Proceeds were not cut off under § 552(a).

In opposition, Debtors contended that Trustee's "new theory" failed, because as proceeds from the damaged real property collateral, Lenders' security interests in the Settlement Proceeds

-12-

were perfected when the Trust Deeds were recorded. Debtors noted that Trustee's new theory was also inconsistent with his argument that Lenders did **not** have a security interest in the Settlement Proceeds. Lenders argued that Article 9 did not apply in this case because the parties agreed to operate outside of the UCC. If it did apply, Lenders argued that, relying on Wiersma v. O.H. Kruse Grain & Milling (In re Wiersma), 324 B.R. 92, 106 (9th Cir. BAP 2005), rev'd on jurisdictional grounds, 483 F.3d 933 (9th Cir. 2007), they had perfected security interests in one of two ways. First, lawsuit settlement funds stemming from destruction of collateral are considered to be proceeds of the original, damaged collateral. Second, if a creditor has a perfected security interest in after-acquired general intangibles, it also has a secured interest in the settlement funds stemming from a tort claim, because once a lawsuit in tort is settled for money, the debtor's right to payment is converted to a "payment intangible" to which the tort exclusion does not apply.

### 3. The bankruptcy court's decision on the cross-motions for summary judgment

In its published opinion on the cross-motions for summary judgment, the bankruptcy court determined that Lenders had a valid and continuing security interest in the Settlement Proceeds as proceeds of their real property collateral. Arnot v. Endresen (In re Endresen), 530 B.R. 856 (Bankr. D. Or. 2015).

The court first determined that the Trust Deeds provided for assignment of the Miscellaneous Proceeds for security purposes, thereby creating a security agreement, rather than an assignment of those proceeds outright. Id. at 866. The court further

-13-

concluded that the definition of "Miscellaneous Proceeds" in the Trust Deeds "provide[d] an adequate description of the Settlement Proceeds as a settlement or proceeds paid by a third party for damage to the Properties." Id. at 867. In reaching that conclusion, the court disagreed with Trustee's contention that the Miscellaneous Proceeds definition failed to "reasonably identify" the Settlement Proceeds. As an initial matter, the court did not believe the Trust Deeds were designed to create a security interest in personal property under Article 9 of the UCC. Id. at 866. Moreover, only the Settlement Proceeds remained at issue, not any commercial tort claims; those claims had been settled long before the adversary complaint was filed. Therefore, all the court had to determine was whether the definition of "Miscellaneous Proceeds" in the Trust Deeds, as a matter of general contract interpretation, reasonably identified the Settlement Proceeds as subject to Lenders' alleged secured claim, which it determined in the affirmative. Id. at 866-67.

The bankruptcy court's conclusion that Lenders had a valid security agreement that properly described the Settlement Proceeds prompted its consideration of (1) whether the Lenders' security interest properly attached to the Settlement Proceeds and (2) whether that interest was cut off by § 552(a) or saved by the exception in § 552(b)(1). The court concluded that Lenders' security interest in the Settlement Proceeds attached by virtue of the security arrangements for the assignment of Miscellaneous Proceeds in the Trust Deeds. Id. at 869. In other words, the Settlement Proceeds were identifiable Miscellaneous Proceeds under the Trust Deeds to which Lenders' security interests attached for

-14-

purposes of § 552(b)(1) as "proceeds" of their original, damaged collateral. Relying on Wiersma and Ninth Circuit authority that the term "proceeds" in § 552(b)(1) be given the "broadest possible definition," the court rejected Trustee's argument that Lenders' failure to have an identifiable, properly attached and perfected security interest in the construction defect claims, as commercial tort claims, at the intermediate stage prior to settlement of those claims automatically vitiated their security interest in the Settlement Proceeds vis-a-vis the estate. Id. at 868-69.

The bankruptcy court further held that Lenders' interest in the Settlement Proceeds was perfected because (1) Article 9's requirement that a secured party file a UCC-1 financing statement did not apply to Trust Deeds, and (2) even if Article 9 did apply to Trust Deeds in general, a financing statement was not required here. Id. at 869-871. The court reasoned that Lenders perfected their interest in the Properties by recording the Trust Deeds in 2004. The Trust Deeds in turn contained provisions concerning the assignment of Miscellaneous Proceeds which functioned as a security agreement and created a valid security interest that attached to the Settlement Proceeds. Thus, because the security interest in the original real property collateral was perfected, so were the Settlement Proceeds intended for repair of that damaged collateral. Accordingly, Lenders were entitled to summary judgment. Because the court believed that its decision addressed Trustee's "new theory" regarding perfection, it denied his motion for leave to file a second amended complaint.

Finally, based on the "equities of the case" exception in § 552(b)(1), the bankruptcy court determined that Trustee was

-15-

entitled to U.S. Bank's share of the Settlement Proceeds. Id. at 871. In the court's view, U.S. Bank should not benefit as a "free rider" from the significant efforts expended by Lenders after it failed to appear and was defaulted. The court noted that U.S. Bank had ample opportunity to appear and defend its interest in the Settlement Proceeds and had chosen not to do so. As such, it entered a default judgment against U.S. Bank. Id.

## II. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A), (B), (C), (K) and (O). We have jurisdiction under 28 U.S.C. § 158.

## III. ISSUES

1. Did the bankruptcy court err in determining that the Settlement Proceeds were "proceeds" of Lenders' real property collateral and thus "proceeds" for purposes of § 552(b)(1)?

2. Did the bankruptcy court abuse its discretion in awarding U.S. Bank's share of the Settlement Proceeds to Trustee under the "equities of the case" exception in § 552(b)(1)?

## IV. STANDARDS OF REVIEW

We review a bankruptcy court's grant of summary judgment de novo. Fresno Motors, LLC v. Mercedes-Benz USA, LLC, 771 F.3d 1119, 1125 (9th Cir. 2014); Good v. Daff (In re Swintek), 543 B.R. 303, 306 (9th Cir. BAP 2015). Likewise, we review a bankruptcy court's legal conclusions, including its interpretation of the Bankruptcy Code and state law, de novo. Rund v. Bank of Am. Corp. (In re EPD Inv. Co., LLC), 523 B.R. 680, 684 (9th Cir. BAP 2015).

The decision whether to apply the equitable exception under § 552(b)(1) is reviewed for abuse of discretion. See J. Catton

-16-

_Farms, Inc. v. First Nat'l Bank of Chi._, 779 F.2d 1242, 1247 (7th Cir. 1985). Accordingly, we reverse where the bankruptcy court applied an incorrect legal rule or where its application of the law to the facts was illogical, implausible or without support in inferences that may be drawn from the record. _Ahanchian v. Xenon Pictures, Inc._, 624 F.3d 1253, 1258 (9th Cir. 2010) (citing _United States v. Hinkson_, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc)).

We may affirm on any ground supported by the record, regardless of whether the bankruptcy court relied upon, rejected or even considered that ground. _Fresno Motors, LLC_, 771 F.3d at 1125.

## V. DISCUSSION

### A. Summary judgment standards

Under Civil Rule 56, applicable here by Rule 7056, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Civil Rule 56(a). When deciding a motion for summary judgment, the court does not weigh the evidence to determine the truth of the matter asserted but simply determines whether a genuine issue for trial exists. _Anderson v. Liberty Lobby, Inc._, 477 U.S. 242, 249 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." _Id._ at 248.

No material facts are disputed in this case. We agree with the parties that the issues presented before this Panel are purely questions of law.

-17-

**B. Analysis**

We agree with the bankruptcy court's conclusion that Lenders' have valid and continuing security interests in the Settlement Proceeds, but on a slightly different basis. The question before us is whether the Miscellaneous Proceeds provisions in the Trust Deeds include the Settlement Proceeds as proceeds of Lenders' original collateral. If so, did Lenders' prepetition lien extend to those postpetition proceeds absent a filed UCC-1 financing statement? We conclude the answer to both of these questions is yes.

**1. Section 552**

Section 552(a) provides the general rule that property acquired postpetition by the debtor or the estate is not subject to any lien resulting from any prepetition security agreement. However, § 552(b)(1) provides certain exceptions from this general rule. If the security interest created by a prepetition agreement extended to property of the debtor acquired prepetition, and to "proceeds, products, offspring, or profits of such property," then the security interest extends to such proceeds, products, offspring, or profits of such property acquired postpetition to the extent provided by the security agreement and applicable nonbankruptcy law. § 552(b)(1). In other words, "if a pre-petition security interest encumbers collateral and its proceeds, any proceeds of that pre-petition collateral remain subject to the security interest even if they are received post-petition." Arkison v. Frontier Asset Mgmt., LLC (In re Skagit Pac. Corp.), 316 B.R. 330, 335 (9th Cir. BAP 2004). The exceptions found in § 552(b)(1) are, in turn, subject to the

-18-

exception that the court may order otherwise based on the "equities of the case."

"[T]he purpose of § 552 is to permit a debtor 'to gather into the estate as much money as possible to satisfy the claims of all creditors[;]' but § 552(b) 'balances the Code's interest in freeing the debtor of prepetition obligations with a secured creditor's rights to maintain a bargained-for interest in certain items of collateral. It provides a **narrow** exception to the general rule of [§] 552(a).'" Fin. Sec. Assurance, Inc. v. Days Cal. Riverside Ltd. P'ship (In re Days Cal. Riverside Ltd. P'ship), 27 F.3d 374, 375 (9th Cir. 1994) (emphasis in original) (quoting Philip Morris Capital Corp. v. Bering Trader, Inc. (In re Bering Trader, Inc.), 944 F.2d 500, 502 (9th Cir. 1991) ("Section 552(b) clearly contemplates an exception where the parties have bargained for an interest in one of the five types of property listed therein.")).

### 2. Definition of "Miscellaneous Proceeds" in the Trust Deeds includes the Settlement Proceeds.

The bankruptcy court correctly concluded that § 552(a) applies. The Settlement Proceeds came into existence postpetition; Lenders had a prepetition security agreement — i.e., the Trust Deeds — which created a lien on the collateral described in the Trust Deeds.[7] Trustee does not dispute that Lenders had valid liens on the Properties by way of their recorded Trust Deeds. His dispute is that the Settlement Proceeds are not

---

[7] The Trust Deeds are prepetition "security agreements" as defined in § 101(50), and the security interests created by the Trust Deeds are "liens" as defined in § 101(37).

-19-

"proceeds" of Lenders' real property collateral for purposes of § 552(b)(1).

The nature and extent of security interests are determined by state law. In re Bering Trader, Inc., 944 F.2d at 502 (citing Unsecured Creditors Comm. v. Marepcon Fin. Corp. (In re Bumper Sales, Inc.), 907 F.2d 1430, 1437 (4th Cir. 1990)). We note that Oregon's UCC law does not govern in this case. Or. Rev. Stat. § 79.109(4)(k) provides that Article 9 of the UCC does not apply to the "creation or transfer of an interest in or lien on real property . . . and the proceeds thereof." Put simply, it does not govern trust deeds and mortgages. While that statute lists certain exceptions to this exclusion, none of them apply here.[8]

---

[8] Or. Rev. Stat. § 79.0109(4)(k) provides, in full, that this chapter does not apply to

"[t]he creation or transfer of an interest in or lien on real property, including a lease or rents thereunder, or a sellers or purchasers interest in a land sale contract and the proceeds thereof, except to the extent that provision is made for:

(A) Liens on real property in Or. Rev. Stat. § 79.0230 and 79.0308 (exception for provisions regarding security interests in which the parties' agreement expressly postpones the time the security interest attaches and the exception for provisions regarding agricultural liens);
(B) Fixtures in Or. Rev. Stat. § 79.0334 (no fixtures at issue here);
(C) Fixture filings in Or. Rev. Stat. § 79.0501, 79.0502, 79.0512, 79.0516 and 79.0519 (same as (B));
(D) Security agreements covering personal and real property in Or. Rev. Stat. § 79.0604[.]

Arguably, Or. Rev. Stat. § 79.0109(4)(k)(D) is the only exception that could apply. However, even if it did apply to the Trust Deeds at issue, Or. Rev. Stat. § 79.0604, which covers a secured party's default rights and procedure, makes clear that the existence of a security instrument securing both real and personal
(continued...)

-20-

Under Or. Rev. Stat. § 86.715, "[a] trust deed is deemed to be a mortgage on real property and is subject to all laws relating to mortgages on real property" (with certain exceptions regarding foreclosure not applicable here). Accordingly, we look to the language of the Trust Deeds to begin our analysis.

The Trust Deeds provided for a lien on the real property and the "Miscellaneous Proceeds" of that property, as defined in the Trust Deeds. The Trust Deeds specifically defined what "proceeds" of the real property would be covered by the Lenders' liens. The definition of "Miscellaneous Proceeds" includes "any compensation, settlement, award of damages, or proceeds paid by any third party . . . for: (i) damage to, or destruction of, the Property . . . ." Debtors' state court action involved claims against the builder that the Properties were negligently constructed, diminishing the value of the Property. Those claims were settled and reduced to the Settlement Proceeds. We conclude, as did the bankruptcy court, that the definition of "Miscellaneous Proceeds" in the Trust Deeds includes the Settlement Proceeds as a settlement or proceeds paid by a third party for damage to the Properties.

**3. The Settlement Proceeds are "proceeds" of Lenders' real property collateral and are "proceeds" for purposes of § 552(b)(1).**

Now we must determine whether the Settlement Proceeds are "proceeds" of Lenders' real property collateral and whether Lenders acquired, through their Trust Deeds, a security interest

----

[8](...continued)
property does not "prejudic[e] any rights with respect to the real property." Or. Rev. Stat. § 79.0604(1).

-21-

in those proceeds.  Again, we conclude the answer to both of these questions is yes.

The bankruptcy court noted it was "treading in virgin territory" with this precise issue.  Case law on the matter is essentially (and surprisingly) nonexistent.  However, we have located persuasive authority that supports our conclusion that the Settlement Proceeds are proceeds of Lenders' real property collateral and, thus, are "proceeds" for purposes of § 552(b)(1).

In Farmer v. Citizens National Bank of Athens (In re Davis), 528 B.R. 757 (Bankr. E.D. Tenn. 2015), issued two weeks before the bankruptcy court's opinion here, the debtors owned real property subject to two deeds of trust held by the bank.  Id. at 759.  The property was damaged when a dike maintained by the Tennessee Valley Authority was breached, filling the property with coal ash.  The debtors sued the TVA and filed for chapter 7 relief.  The chapter 7 trustee settled the claim postpetition for approximately $81,000 after attorney's fees, which the bankruptcy court approved.  Id. at 759-60.  The trustee then sought to avoid the bank's interest in the settlement proceeds.  He argued the settlement proceeds were personal property, general intangibles or proceeds of litigation; the bank failed to take action to perfect any liens to such personal property vis-a-vis a UCC-1 filing.  Id. at 760.  Thus, argued the trustee, the bank's deed of trust did not have priority over his rights as a hypothetical judgment lien creditor or postpetition lien holder under §§ 544 and 549.  Id. The bank argued that its lien under the deed of trust attached to the settlement proceeds that arose from damage to the real property collateral.  Id.

-22-

The issue, as the court saw it, was whether the settlement proceeds had the character of personalty or whether they were substitute collateral for the value of the real property. Id. The operative language in the deed of trust supporting the bank's position was the definition of "Property," which included "all . . . rights . . . now or hereafter existing in connection with the property or derived therefrom." Id. at 762. As in the instant case, the court noted that none of the cases cited by the trustee in support of his argument that the proceeds were subject to the UCC concerned settlement proceeds for damage to real property subject to a deed of trust or mortgage. Id. After reviewing cases analogous to the issue before it (which we discuss below), and determining that the settlement proceeds fit within the definition of "Property" under the deed of trust as a "right . . . derived therefrom," the court held that the settlement proceeds were substitute collateral for the diminution in value of the real property subject to the bank's lien under the deed of trust; they were not a general intangible requiring lien perfection under the UCC. Id. Thus, the bank's interest trumped that of the trustee's.

Wilson v. Mellott (In re Wilson), 2010 WL 5341917 (Bankr. D. Neb. Dec. 21, 2010), presented the same issue regarding the respective rights in postpetition settlement proceeds from a lawsuit involving defective construction claims. In 1997, the debtors had purchased a home subject to a recorded deed of trust. Id. at *2. In 2005, the plaintiff loaned the debtors money and held as collateral a security agreement and assignment from the debtors of certain causes of action against the contractors who

-23-

built the debtors' home. In particular, those claims alleged losses based on deficiencies in the home's construction, resulting in significant mold damage. Id. The plaintiff perfected his security interest by filing a UCC-1 financing statement. Id. After the debtors had commenced litigation against the builder, they filed for chapter 7 relief in 2007. Id. A settlement was reached postpetition in 2009, resulting in $129,662.44 to the debtors after attorney's fees. Id. at *1.

A fight ensued about who was entitled to the settlement proceeds – the plaintiff or the defendant holding the trust deed. The parties "characterize[d] the central question . . . as whether the settlement proceeds are the debtors' personal property or whether the proceeds are substitute collateral for the value of the real property." Id. at *3. The court reasoned that if the proceeds were personal property, then plaintiff's lien was superior to defendant's deed of trust; if the proceeds were for damage to the real property collateral, the defendant's lien had priority. Id.

Relying on a California state court case, the court held that settlement proceeds paid for damage to real property are subject to a mortgagee's interest in the damaged real property:

> When a monetary remedy is awarded for damage to real property, it "takes the place of the reduced value of the land." Am. Sav. & Loan Ass'n v. Leeds, 440 P.2d 933, 937 n.2 (Cal. 1968) (en banc). Accordingly, a lender holding an interest in real estate as collateral would be entitled to damages for injury to his security. Therefore, to the extent any portion of the settlement allocable to property damage represents a reduction in the value of the [defendant's] collateral, it is subject to the deed of trust lien, which is superior to [plaintiff's] security interest.

Id. at *4.

-24-

Next is In re Gilley, 236 B.R. 448 (Bankr. M.D. Fla. 1999). There, the chapter 12 debtor filed a motion under § 506 to determine the secured status of the mortgagee's proof of claim. The debtor contended that proceeds from the settlement of his claims against a fungicide manufacturer for damage to his real property were personal property not subject to the lien of the mortgagee. Id. at 451. The mortgagee contended the settlement proceeds represented an "interest" in the real property within the meaning of the mortgage and, thus, were included in its collateral. Id. The bankruptcy court rejected the debtor's argument, noting that the legal description of the real property in the mortgage included the following provision:

> **[T]ogether with all rights, interests, easements, hereditaments and appurtenances thereunto belonging, the rents, issues, and profits thereof** and revenues and income therefrom, all improvements and personal property now or later attached thereto or reasonably necessary to the use thereof, including, but not limited to, ranges, refrigerators, clothes washers, clothes dryers, or carpeting purchased or financed in whole or in part with loan funds, all water, water rights, and water stock pertaining thereto, **and all payments at any time owing to Borrower by virtue of any sale, lease, transfer, conveyance, or condemnation of any part thereof or interest therein** — all of which are herein called "the property".

Id. at 450 (emphasis in original).

In light of the mortgage's language describing the property subject to the lien to include "all rights, interests, easements, hereditaments and appurtenances thereunto belonging," the court held that the mortgagee's lien attached to the settlement proceeds "on the basis of the express terms of the mortgage contract." Id. at 452-53. The claims against the manufacturer and the proceeds of that claim constituted a "right or interest" belonging to the

-25-

real property within the meaning of the mortgage.

Finally, in <u>Ferry Road Properties, LLC v. RL BB ACQ II-TN, LLC (In re Ferry Road Properties, LLC)</u>, 2012 WL 3888201 (Bankr. E.D. Tenn. Sept. 7, 2012), the debtor was a party to a state court lawsuit filed prepetition against the builder of the debtor's retail store, which sought damages resulting from the builder's negligence. <u>Id.</u> at *1. The debtor's property was subject to a deed of trust. The debtor filed for chapter 11 relief while the lawsuit was still pending. <u>Id.</u> at *2. The issue was whether the mortgagee's lien on the real property extended to the debtor's cause of action for damages to the real property and loss of business income. The operative language in the deed of trust was the following:

> Grantor hereby conveys to Trustee, in trust, with power of sale, the Real Property described in this Deed of Trust, together with any improvements, equipment and fixtures existing or hereafter placed on or attached to this Real Property, all proceeds thereof and all other appurtenant rights and privileges. The term "the Property" shall include this Real Property, any such improvements, fixtures, and also all appurtenant rights and privileges.

<u>Id.</u> The mortgagee argued that based on its deed of trust, it had a lien not only on the real property, but "all proceeds thereof." <u>Id.</u> The mortgagee argued that the lawsuit represented "proceeds" of the real property because it was a claim for damages and loss associated with the realty. <u>Id.</u>

The court agreed with the mortgagee to an extent, limiting its lien to the claim for damages to the real property, because such "damages are viewed as a substitute for the realty itself." <u>Id.</u> at *7. However, to the extent that the debtor's state court action encompassed claims beyond property damage — i.e., the loss

-26-

of business income — the mortgagee had no interest absent a properly filed UCC-1. Id. The court's holding with respect to the business income is consistent with Oregon law. See In re Nendels-Medford Joint Venture, 127 B.R. 658, 663-64 (Bankr. D. Or. 1991) (when mortgagee intended to obtain not only a lien on the real property but also a security interest in revenue flowing from operations of the business operated on the real property, the function of the transaction changed and the purpose behind Oregon law excepting a real estate interest from the provisions of Article 9 no longer applied) (citing Sec. Bank v. Chiapuzio, 304 Or. 438, 448, 747 P.2d 335, 341 (1987), superseded by statute on other grounds as stated in Bedortha v. Sunridge Land Co., Inc., 213 Or. 308, 314 n.4, 822 P.2d 694 (1991)).

The holdings of these cases, that a mortgagee has a superior interest in proceeds paid on account of damage to or diminution in value of the real property collateral subject to the trust deed or mortgage because such proceeds are a substitute for that realty collateral, is consistent with the Restatement (Third) of Property (Mortgages), which provides, in relevant part:

> (a) Unless a different disposition is provided in the mortgage, the mortgagee has a right to the following funds paid on account of loss or damage to the mortgaged real estate, to the extent that the mortgagee's security has been impaired by the loss or damage . . .
>
> (1) the proceeds paid by a casualty insurer due to the occurrence of an insured loss to the real estate, if the mortgagor promised the mortgagee, in the mortgage or otherwise, to purchase the insurance; and
>
> (2) an award resulting from a taking of all or part of the real estate under power of eminent domain, or the proceeds of a sale to a governmental body in lieu of such taking.

Restatement (Third) of Property (Mortgages) § 4.7(a) (1997).

-27-

. . . Such funds are viewed as **substitute collateral, and the mortgagee's claim on them is sometimes described as an "equitable lien."** This means simply that the mortgagee is entitled to recover the funds to the extent necessary to compensate for the impairment of security that results from the loss or damage, with a maximum recovery equal to the balance owing on the mortgage debt. This result is required to avoid unfairness to the mortgagee through devaluation of the real estate as a consequence of the loss or damage. . . .

**The principle of Subsection (a) is applicable to other sorts of funds that represent recovery for loss or damage to the mortgaged real estate.** For example, if a third party commits waste and the mortgagor sues and recovers damages, the recovery may be regarded as substitute collateral and subjected to the mortgagee's claim. The mortgagor will still benefit indirectly, since the funds must be applied by the mortgagee toward the debt or made available for restoration of the damage under Subsection (b).

Id. cmt. a (emphases added).

Although the above cases did not deal expressly with § 552(b)(1), their holdings are relevant and highly persuasive. In each case, the court held that when the mortgagee's prepetition deed of trust or mortgage lien against the debtor's real property contains language encompassing the right to payment of settlement proceeds for damages to or diminution in value of the debtor's real property, the mortgagee's lien attaches to those proceeds by way of its properly recorded deed of trust or mortgage. These courts either expressly or implicitly found that such proceeds were not personalty subject to the perfection requirements under the UCC.

We see no reason why the outcome should be any different when applying § 552(b)(1). Lenders each held prepetition Trust Deeds, which placed a lien on Debtor's real property and extended to any "Miscellaneous Proceeds" of that property, as defined by the Trust Deeds. By way of the operative assignment language in the Trust

-28-

Deeds — "All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender" — any such proceeds were assigned to Lenders. The definition of "Miscellaneous Proceeds" included the Settlement Proceeds as a settlement or proceeds paid by a third party for damage to the Properties. Lenders' security interest in the real property and in such proceeds attached by virtue of the security arrangements for the assignment of Miscellaneous Proceeds in the Trust Deeds and were perfected upon recording the Trust Deeds. The postpetition Settlement Proceeds were paid for the purpose of repairing the damage to the real property collateral and thus were substitute collateral subject to the Lenders' liens under the Trust Deeds. Accordingly, Lenders' liens "extended" to the Settlement Proceeds as "proceeds" of the real property collateral and thus are "proceeds" for purposes of § 552(b)(1).

For these reasons, we AFFIRM the portion of the judgment determining that Lenders have a valid and continuing security interest in the Settlement Proceeds that was not cut off by § 552(a), but saved by the exception in § 552(b)(1).

**4. The bankruptcy court abused its discretion when it awarded U.S. Bank's share of the Settlement Proceeds to Trustee.**

Debtors contend in their cross-appeal that the bankruptcy court erred in holding that based on the "equities of the case" exception to § 552(b)(1), it could void U.S. Bank's security interest in the Settlement Proceeds because U.S. Bank failed to participate in the litigation and had been defaulted. Debtors contend that if some of the lenders had enforceable security interests in the Settlement Proceeds, then all of them did based on their identical Trust Deeds, regardless of their participation

-29-

in the litigation.

As noted above, § 552(b)(1) provides that a prepetition security interest will attach to certain types of bankruptcy estate property "except to any extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise." Although "equities of the case" is not defined in the Code, at least five courts of appeal have assigned a nearly identical meaning to this provision. See Stanziale v. Finova Capital Corp. (In re Tower Air, Inc.), 397 F.3d 191, 205 (3d Cir. 2005); N.H. Bus. Dev. Corp. v. Cross Baking Co., (In re Cross Baking Co.), 818 F.2d 1027, 1033 (1st Cir. 1987); United Va. Bank v. Slab Fork Coal Co., 784 F.2d 1188, 1191 (4th Cir. 1986); In re J. Catton Farms, Inc., 779 F.2d at 1246-47; Wolters Vill. Ltd. v. Vill. Props., Ltd. (In re Vill. Props., Ltd.), 723 F.2d 441, 444 (5th Cir. 1984). Essentially, these courts have held that the principal purpose of the equities of the case exception is to prevent secured creditors from reaping unjust benefits from an increase in the value of collateral during a bankruptcy case resulting from the (usually) reorganizing chapter 11 debtor's use of other assets of the estate or from the investment of non-estate assets. See Toso v. Bank of Stockton (In re Toso), 2007 WL 7540985, at *13 (9th Cir. BAP Jan. 10, 2007) (citing the above cases and determining that "[n]o circuit case law attributes a different meaning to this phrase."); All Points Capital Corp. v. Laurel Hill Paper Co. (In re Laurel Hill Paper Co.), 393 B.R. 89, 93 (Bankr. M.D.N.C. 2008) ("The cases involving section 552(b)(1) appear to place the most weight on whether a debtor expended unencumbered funds of the estate, at the expense of the unsecured

-30-

creditors, to enhance the value of the collateral.").

We agree with Debtors that the policy rationale behind the equity exception is simply inapplicable to this case. Even Trustee concedes that the bankruptcy court's application of the exception here was a "creative use" of that statutory provision. Here, no rehabilitation of a debtor is at issue, and awarding U.S. Bank its 20% share of the Settlement Proceeds does not afford it any sort of "windfall" at the expense of unsecured creditors, considering that the Settlement Proceeds are earmarked to repair its damaged, real property collateral, which undoubtedly lost value. Further, nothing in the record suggests that U.S. Bank was on notice that its security interest in the Settlement Proceeds would be extinguished if it failed to appear.

While we can certainly understand the bankruptcy court's frustration with a secured lender which failed to defend its security interest, we believe it misapplied the equity exception under § 552(b)(1). Accordingly, we REVERSE that portion of the judgment.

## VI. CONCLUSION

For the foregoing reasons, we AFFIRM the judgment in part and REVERSE the judgment in part.

-31-