FILED

DEC 4 2020

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT



**NOT FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
# OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>SERAPIO VENEGAS,<br><br>　　　　　Debtor. | BAP No. CC-20-1077-GLS<br><br>Bk. No. 2:19-bk-13181-RK |
| ALLIANCE UNITED INSURANCE<br>COMPANY,<br><br>　　　　　Appellant,<br>v.<br>BRAD D. KRASNOFF, Chapter 7 Trustee,<br>　　　　　Appellee. | MEMORANDUM* |

Appeal from the United States Bankruptcy Court
for the Central District of California
Robert N. Kwan, Bankruptcy Judge, Presiding

Before: GAN, LAFFERTY, and SPRAKER, Bankruptcy Judges.

## INTRODUCTION

Alliance United Insurance Company ("Alliance") appeals the

bankruptcy court's order denying its motion to dismiss the involuntary

---

* This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

chapter 7[1] case filed against Serapio Venegas ("Debtor"). Alliance argues that the involuntary petition was filed by a single judgment creditor for the improper purpose of circumventing state law collection limitations. The bankruptcy court determined that Alliance lacked standing to file the motion to dismiss and that cause did not exist to dismiss the case under § 707(a). Alliance has not established that it had standing to seek dismissal and has not shown that the bankruptcy petition was filed for an improper purpose. We AFFIRM.

## FACTS

### A.    Prepetition Events

In 2015, Debtor caused serious injuries to Stephan Wood ("Wood") when his vehicle struck the bicycle Wood was riding. Debtor attempted to flee, dragging Wood under the vehicle for more than a quarter mile. Debtor was later apprehended and criminally convicted. At the time of the injury Debtor was insured by Alliance.

In February 2016, Wood made a written demand to Alliance for payment of the policy limits subject to specific terms and conditions. Alliance purported to accept the settlement offer and tender payment, but provided a release that was inconsistent with the terms and conditions of Wood's offer. The state court later determined that Alliance did not validly

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532.

accept the settlement offer.

In July 2016, Wood filed suit against Debtor in state court (the "Personal Injury Action"). The Personal Injury Action proceeded to trial and resulted in a jury verdict against Debtor, and in favor of Wood, in the amount of $13,832,242, including costs. As part of its verdict, the jury determined that Debtor acted with "malice, oppression, or fraud."

Wood was unable to collect on the judgment. Through the assistance of investigators, he determined that Debtor had assets of limited value other than his potential rights against Alliance for its alleged bad faith in failing to accept a reasonable settlement offer. However, Debtor did not pursue such an action against Alliance and steadfastly refused to assign his rights to Wood.

## B.    The Involuntary Petition

In March 2019, Wood filed an involuntary chapter 7 petition against Debtor. Wood filed a unilateral status report stating that Debtor had few creditors and few assets of value other than his rights against Alliance. Debtor did not respond to the involuntary petition, and the bankruptcy court entered an order for relief in April 2019. Brad D. Krasnoff ("Trustee") was appointed as chapter 7 trustee.

Debtor failed to file schedules and statements pursuant to the order for relief and failed to appear at the initial § 341 meeting of creditors or any of the twelve continued § 341 meetings. Trustee obtained court authority to

file the schedules and statements on Debtor's behalf, and ultimately filed a complaint to deny Debtor's discharge under § 727(c). The bankruptcy court entered a default judgment denying Debtor's discharge in August 2020.

After consulting with Wood, Trustee filed schedules and statements. The schedules listed assets consisting of a parcel of land, valued at $17,000, and the estate's claims against Alliance, valued at $14,164,610. In addition to Wood, the schedules listed only one other creditor, which held a claim for $769.

## C.    The State Court Action

In September 2019, Trustee filed suit against Alliance in state court (the "Bad Faith Action"). Trustee alleged that Alliance breached the covenant of good faith and fair dealing by failing to accept a reasonable settlement offer within policy limits. Alliance filed a notice of removal to the bankruptcy court and filed its answer denying the allegations. As an affirmative defense, Alliance claimed that the involuntary bankruptcy was filed for an improper purpose, and upon dismissal of the case, Trustee would lack standing.

Trustee moved to remand the Bad Faith Action, arguing that the suit was a non-core proceeding involving only state law claims. Alliance responded by filing a combined opposition to the motion to remand and a motion to dismiss the bankruptcy case.

4

**D.    The Motion To Dismiss And The Court's Ruling**

Alliance argued that cause existed to dismiss the case under § 707(a) because Wood filed the involuntary petition solely as a judgment enforcement mechanism in a two-party dispute. Alliance asserted that the petition served no legitimate bankruptcy purpose because there were no competing creditors, no need for pro rata distribution, and no need for any bankruptcy-specific avoidance powers. It argued that Wood had adequate collection remedies under state law and Debtor had no need for a bankruptcy discharge given that the judgment would likely be nondischargeable based on the jury's finding of malice, oppression, or fraud. Alliance cited *In re Murray*, 543 B.R. 484 (Bankr. S.D.N.Y. 2016), *aff'd*, 565 B.R. 527 (S.D.N.Y. 2017), *aff'd*, 900 F.3d 53 (2d Cir. 2018), for the proposition that an involuntary bankruptcy filed as a collection mechanism should be dismissed for cause under § 707(a).

Trustee opposed the motion to dismiss and argued that because Alliance was not a creditor and had no interest in the outcome of the case, it lacked standing to seek dismissal. Trustee also argued that Alliance failed to show that cause existed to dismiss the case in light of the totality of the circumstances and dismissal would prejudice Wood, the estate, and the administrative claimants. Trustee distinguished *Murray* on the basis that it involved a debtor's challenge to the involuntary petition prior to the order for relief and asserted that the factors cited in *Murray* did not favor

5

dismissal of Debtor's case.

Alliance filed a reply, arguing that Wood's ability to sue Alliance directly was restricted by state law, and the bankruptcy was part of a scheme to circumvent that limitation. Alliance contended that it had standing to file the motion to dismiss by virtue of its affirmative defense raised in the Bad Faith Action. It further argued that the issues raised in the motion were structural and related to the integrity of the bankruptcy system, such that the court should dismiss the case regardless of whether Alliance had standing. Finally, Alliance argued that Trustee's attempts to distinguish *Murray* were unavailing, and because state law determined the remedies available to Wood, neither he nor the administrative professionals would be prejudiced by dismissal.

The bankruptcy court determined that Alliance lacked standing to seek dismissal under § 707(a) and cause did not exist because dismissal would prejudice Wood, the estate, and the administrative claimants. The court entered a written order denying the motion to dismiss, and later remanded the Bad Faith Action to state court. Alliance timely appealed the order denying its motion to dismiss.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A). An order denying a motion to dismiss is typically interlocutory. *Sherman v. SEC (In re Sherman)*, 491 F.3d 948, 967 n.24 (9th

Cir. 2007). We granted leave to appeal the interlocutory order and expedited the briefing schedule. We therefore have jurisdiction under 28 U.S.C. § 158(a)(3).

## ISSUES

Whether Alliance had standing to file the motion to dismiss the bankruptcy case.

Whether the bankruptcy court erred by denying Alliance's motion to dismiss.

## STANDARDS OF REVIEW

Standing is a question of law which we review de novo. *Hughes v. Tower Park Props., LLC (In re Tower Park Props. LLC)*, 803 F.3d 450 n.5 (9th Cir. 2015) (quoting *Palmdale Hills Prop., LLC v. Lehman Commercial Paper, Inc. (In re Palmdale Hills Prop. LLC)*, 654 F.3d 868, 873 (9th Cir. 2011)).

With regard to a motion to dismiss, "we review de novo whether a **type** of misconduct can constitute 'cause ' under § 707(a)." *In re Sherman*, 491 F.3d at 969. We then review the bankruptcy court's decision to grant or deny the motion to dismiss for "cause" for abuse of discretion. *Id.*

Under de novo review, we look at the matter anew, giving no deference to the bankruptcy court's determinations. *Barnes v. Belice (In re Belice)*, 461 B.R. 564, 572 (9th Cir. BAP 2011). A bankruptcy court abuses its discretion if it applies the wrong legal standard, or misapplies the correct legal standard, or if its factual findings are clearly erroneous.

7

*TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 832 (9th Cir. 2011) (citing *United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc)). We may affirm the bankruptcy court's order on any basis supported by the record. *Fresno Motors, LLC v. Mercedes-Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014); *Arnot v. Endresen (In re Endresen)*, 548 B.R. 258, 268 (9th Cir. BAP 2016).

## DISCUSSION

Alliance argues that the bankruptcy court erred because: (1) Trustee could not have filed the Bad Faith Action without the bankruptcy petition and therefore Alliance had constitutional standing; and (2) the involuntary petition was an improper use of the bankruptcy process which constituted "cause" to dismiss under § 707(a).

### A.    Alliance Did Not Have Standing To File The Motion To Dismiss

Alliance argues that it satisfied the requirements of constitutional standing and also argues that because it is an insurer, it had standing as a party in interest in any case involving its insured under the holdings of *Motor Vehicle Casualty Company v. Thorpe Insulation Company (In re Thorpe Insulation Company)*, 677 F.3d 869 (9th Cir. 2012) and *In re Global Industrial Technologies, Inc.*, 645 F.3d 201 (3d Cir. 2011) ("*GIT*"). In both *Thorpe* and *GIT*, the insurers had standing to object to confirmation of chapter 11 plans because the proposed plans directly affected their liability and contractual rights and therefore, were not "insurance neutral." 677 F.3d at 885-87; 645

8

F.3d at 212. Neither case stands for the proposition that insurers always have standing in bankruptcy cases involving their insureds. Standing must be determined on a "case by case basis." *In re Thorpe Insulation Co.*, 677 F.3d at 885 (quoting *In re Amatex Corp.*, 755 F.2d 1034, 1042 (3d Cir. 1985)).

To establish constitutional standing, Alliance must demonstrate "(1) an injury in fact, (2) a causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision." *In re Sisk*, 962 F.3d 1133, 1141 (9th Cir. 2020) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)). "These requirements are the 'irreducible constitutional minimum of standing.'" *Id.* (citing *Lujan*, 504 U.S. at 560-61). "The party invoking federal jurisdiction bears the burden of establishing these elements." *Lujan*, 504 U.S. at 561.

### 1. Injury In Fact

Alliance contends that the bankruptcy filing caused an injury in fact because it allowed Trustee to file the Bad Faith Action which could not have been filed but for the bankruptcy case.

An injury in fact is "the 'first and foremost' of standing's three elements." *In re Sisk*, 962 F.3d at 1142 (quoting *Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 103 (1998)). It requires "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Bishop Paiute Tribe v. Inyo Cnty.*, 863 F.3d 1144, 1153 (9th Cir. 2017) (citing *Lujan*, 504 U.S. at 560). A "concrete" injury

9

is one which actually exists and is not "abstract," "remote," or "speculative." *In re Sisk*, 962 F.3d at 1141 (citations omitted).

The bankruptcy filing did not cause an injury in fact to Alliance because Alliance had no interest in the outcome of the bankruptcy case. It is not a creditor. *See In re Sherman*, 491 F.3d at 965 (holding that creditors have standing to seek dismissal under § 707(a) because a bankruptcy filing necessarily affects creditors' rights to enforce debts). And, unlike the insurers in *Thorpe* and *GIT*, Alliance's litigation rights and potential liabilities are unaffected by the bankruptcy case. *See* 677 F.3d at 887; 645 F.3d at 212.

Furthermore, the bankruptcy petition did not affect state law limitations regarding Alliance's potential liability for an unreasonable failure to settle a claim. Under state law, Wood was not permitted to sue Alliance directly for its alleged breach of duty to settle the claim within policy limits. *Murphy v. Allstate Ins. Co.*, 17 Cal. 3d 937, 946 (1976).

But, Trustee does not assert the Bad Faith Action on behalf of Wood. The cause of action belonged to Debtor and became property of the estate under § 541(a). *See United States v. Whiting Pools, Inc.*, 462 U.S. 198, 205 n.9 (1983) ("The scope of [§ 541(a)(1)] is broad. It includes all kinds of property, including . . . causes of action."). It is Debtor's cause of action which Trustee asserts, not Wood's. *See Smith v. Arthur Andersen LLP*, 421 F.3d 989, 1002 (9th Cir. 2005) ("[U]nder the Bankruptcy Code the trustee stands in

10

the shoes of [the debtor] and has standing to bring any suit that [the debtor] could have instituted had it not petitioned for bankruptcy . . . a bankruptcy trustee has no standing generally to sue third parties on behalf of the estate's creditors.") (citations omitted)).

The filing of the bankruptcy petition and the entry of the order for relief did not alter Alliance's potential liability or legal rights under state law. It merely placed Debtor's cause of action under the control of an independent trustee. Because the petition did not invade any legally protected interest in a concrete and particularized way, the bankruptcy filing does not constitute an injury in fact sufficient to confer standing on Alliance to seek dismissal of the case under § 707(a).

### 2. Causal Connection

Establishing a causal connection requires Alliance to show that its injury was fairly traceable to the challenged action, and not "th[e] result [of] the independent action of some third party not before the court." *Lujan*, 504 U.S. at 560-61 (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41-42 (1976)).

Because the bankruptcy petition did not alter Alliance's potential liability or rights under state law, any injury caused by the Bad Faith Action is not causally connected to the bankruptcy petition. The Bad Faith Action is not dependent on any bankruptcy-specific cause of action. The source of Alliance's potential liability is state law and the factual

11

circumstances which occurred at the time of Wood's settlement offer.

Alliance argues that but for the bankruptcy filing, Trustee would not have been able to file the Bad Faith Action. We agree, but this does not mean that the Trustee's suit is "fairly traceable" to the petition.

Although Wood filed the involuntary petition with the expectation that a trustee would be appointed and pursue the cause of action against Alliance, the Bankruptcy Code imposes a duty on a chapter 7 trustee to only pursue causes of action which, in the trustee's business judgment, will be of value to the estate. *See Koch Ref. v. Farmers Union Cent. Exch., Inc.*, 831 F.2d 1339, 1346-47 (7th Cir. 1987) ("a trustee has the authority to prosecute or to decline to bring an action on behalf of the estate"); *In re Carvalho*, 578 B.R. 1, 12-13 (Bankr. D.D.C. 2017) ("a trustee is granted wide authority and discretion regarding . . . whether litigation is worth pursuing"); *In re Consol. Indus. Corp.*, 330 B.R. 712, 715 (Bankr. N.D. Ind. 2005) ("A bankruptcy trustee is not required to prosecute every cause of action belonging to the bankruptcy estate. Instead, the trustee is given a substantial degree of discretion in deciding how best to administer the estate committed to his care and his actions are measured by a business judgment standard.").

In other words, Trustee had to make an independent evaluation of the claim against Alliance and exercise his independent business judgment before filing the Bad Faith Action. Any injury to Alliance is fairly traceable to Trustee's business judgment and his obligations under the Code, but not

12

to the petition itself.

The involuntary petition did not cause Trustee to file the Bad Faith Action, and as a result, any injury caused by the Bad Faith Action is not fairly traceable to the challenged action.

### 3. Redressability

The final element of constitutional standing requires Alliance to demonstrate that it is "likely," as opposed to merely "speculative," that the injury would be redressed by dismissal of the case. *Lujan*, 504 U.S. at 561. "[R]edressability analyzes the connection between the alleged injury and requested judicial relief. [It] does not require certainty, but only a substantial likelihood that the injury will be redressed by a favorable judicial decision." *Hooshim v. Wolkowitz (In re Kim)*, BAP No. CC-15-1273-TaKuF, 2016 WL 2654350, at *3 (9th Cir. BAP May 2, 2016), *aff'd,* 700 F.Appx. 710 (9th Cir. 2017) *(*quoting *Nw. Requirements Utils. v. FERC,* 798 F.3d 796, 806 (9th Cir. 2015)).

Alliance argues that dismissal of the bankruptcy case would deprive Trustee of standing and would therefore redress the injury. But, as discussed above, dismissal of the case will not change Alliance's potential liability because the source of that liability is not the bankruptcy case or the Bankruptcy Code, it is the factual circumstances surrounding Alliance's alleged failure to settle the personal injury claims within policy limits.

If the case were dismissed, the cause of action would not be

13

eliminated. It would revest in Debtor pursuant to § 349, and Debtor would again be free to pursue the action or assign it to Wood. Therefore, Alliance cannot show that there is a substantial likelihood that dismissal of the case would provide redress.[2]

Because we find that Alliance lacks constitutional standing, we do not consider whether prudential or statutory standing requirements are applicable in this case. The bankruptcy court did not err by determining that Alliance lacked standing to seek dismissal of the case.

**B.      Even If Alliance Had Standing, The Bankruptcy Court Did Not Err By Denying The Motion To Dismiss**

Alliance argues that Wood filed the involuntary petition, which arose from a two-party dispute, for the improper purpose of contravening state law limitations in his effort to enforce the judgment. Alliance also argues that the bankruptcy court erred by focusing its analysis on prejudice to creditors and the estate.

"Under § 707(a), a court may dismiss [a chapter 7 case] only after notice and hearing and only for cause, including three enumerated causes." *In re Sherman*, 491 F.3d at 970 (internal quotation marks and citations

---

[2] We are aware that Debtor refused to pursue Alliance or assign his rights prepetition, but we cannot speculate that he would continue to do so if the case were dismissed, especially in light of the bankruptcy court's denial of discharge. We can conceive of no reasonable basis, economic or otherwise, why Debtor would not assign the cause of action to Wood upon dismissal.

omitted). When the asserted "cause" is not one of the enumerated examples in § 707(a), we first determine whether the asserted "cause" is contemplated by a specific provision of the Bankruptcy Code. *Id.* If so, then there is no "cause" under § 707(a). *Id.*

But, "[i]f there is no specific Bankruptcy Code provision that addresses the asserted 'cause,' the question becomes whether the totality of circumstances amount to § 707(a) 'cause.'" *Hickman v. Hana (In re Hickman)*, 384 B.R. 832, 840 (9th Cir. BAP 2008) (citing *In re Sherman*, 491 F.3d at 970; *Leach v. United States (In re Leach)*, 130 B.R. 855, 856 (9th Cir. BAP 1991)); *see also Marciano v. Fahs (In re Marciano)*, 459 B.R. 27, 50 (9th Cir. BAP 2011), *aff'd* 708 F.3d 1123 (9th Cir. 2013) ("The filing of an involuntary bankruptcy petition is always a 'litigation tactic.' Whether the filing is inappropriate is a fact-dependent determination.").

We agree that under appropriate factual circumstances, filing an involuntary petition for reasons inconsistent with the purposes of the Bankruptcy Code may constitute "cause" for dismissal under § 707(a). However, the totality of circumstances here supports the bankruptcy court's ruling.

The bankruptcy filing did not circumvent or contravene state law as Alliance argues. State law prohibited Wood from directly suing Alliance for a breach of the duty to settle, but the bankruptcy filing did not alter that limitation. Trustee asserts Debtor's cause of action, not Wood's.

15

Additionally, the purpose of the state law limitation is to protect the insured, not the insurer. *Murphy*, 17 Cal.3d at 946 ("the courts imposed the duty to settle to protect the insured"). An insurer's failure to settle within policy limits can subject an insured to excess liability, but by limiting the cause of action against the insurer for the breach, state law allows the insured to control the cause of action and bargain with the injured party for a release from liability in excess of coverage. *Id.* The insurer has no ability to prevent the insured from assigning his claims. *Id.* at 942 ("The insured may assign his cause of action for breach of the duty to settle without consent of the insurance carrier, even when the policy provisions provide the contrary.").

Unlike *Murray*, which involved the threat of potential sale of a debtor's and a non-debtor's interests under § 363(h), the bankruptcy filing here did not impose any means of recovery unavailable under state law. 543 B.R. at 488. And, unlike the creditor in *Murray*, Wood did not file the involuntary petition to obtain a personal tactical advantage against Debtor in collecting his judgment. *Id.* at 493.

Wood filed the petition to allow Trustee to evaluate and pursue a potentially valuable asset which Debtor was threatening to waste. This is a legitimate use of the bankruptcy process. *See Marciano v. Chapnick (In re Marciano)*, 708 F.3d 1123, 1128 (9th Cir. 2013) (noting that "a central purpose of the involuntary bankruptcy laws [is] to 'protect the threatened

16

depletion of assets'") (quoting *In re Manhattan Indus., Inc.*, 224 B.R. 195, 200 (Bankr. M.D. Fla. 1997)). The involuntary petition was not a judgment enforcement mechanism as Alliance suggests, but rather an asset preservation mechanism.

Finally, Alliance argues that the bankruptcy court erred by focusing its "cause" analysis on prejudice to creditors and the estate. Although the cases cited by Trustee in support of this analysis pertain to voluntary dismissals by debtors under § 707(a), it was not improper for the bankruptcy court to consider prejudice as part of the totality of circumstances. More importantly, the record demonstrates that the involuntary petition was filed for a legitimate bankruptcy purpose. The bankruptcy court did not abuse its discretion by determining that the petition was not filed for an improper purpose and that cause did not exist to dismiss the case.

## CONCLUSION

For the reasons set forth above, we AFFIRM the bankruptcy court's order denying Alliance's motion to dismiss.